(114 So. 637)

No. 28706.

**SHUFF v. LIFE & CASUALTY INS. CO. OF TENNESSEE.**

**In re SHUFF.**

Oct. 31, 1927.

*(Syllabus by Editorial Staff.)*

1. **Insurance** ⬉136(4)—**Limitations on agent's authority to deliver policies, unless insured is in sound health at date of policy, held not against public policy.**

    Limitations on the authority of insurance agents to deliver life insurance policies, unless insured is in sound health at date of policy, is not contrary to public policy.

2. **Insurance** ⬉141(1)—**Where insured knew agent was delivering policy without authority and contrary to instructions, there was no deception or misrepresentation.**

    Where insured knew that agent was delivering industrial limited payment life policy without authority and contrary to instructions not to deliver policy unless insured at date of policy was in sound health, there was no deception or misrepresentation of the agent.

3. **Insurance** ⬉146(1)—**When policy is complete, its stipulations, if unambiguous and reasonable, are only evidence of contract.**

    When in insurance policy it is declared to be complete and only evidence of contract, its stipulations, if unambiguous and reasonable and such as parties are competent to make, are as effective as they would be in any other instrument intended to be only evidence of contract.

4. **Insurance** ⬉93—**When insurance agent violates prohibition of instrument constituting contract, he acts for himself and alone is answerable to insured for false pretenses.**

    When insurer is not guilty of deception or misrepresentation either express or implied, and agent does something in violation of prohibition contained in instrument declaring that it constitutes entire evidence of contract between insurer and insured, agent acts for himself and not as agent of insurer, and alone is answerable to insured for consequence of false pretense.

5. **Evidence** ⬉405(1)—**Statute declaring policy contains entire contract forbids insured to contradict written instrument by parol or other extrinsic evidence (Act No. 52 of 1906, as amended by Act No. 227 of 1916).**

    Act No. 52 of 1906, as amended by Act No. 227 of 1916, declaring policy of life insurance shall contain entire contract between parties, is as effective in forbidding insured as in forbidding insurer to contradict written instrument by parol or other extrinsic evidence.

6. **Insurance** ⬉378(1)—**Statute applying only to policies issued without medical examination held inapplicable to policy issued after medical examination (Act No. 97 of 1908).**

    Act No. 97 of 1908, declaring that, if agent knew or could have known true condition of applicant's health, such knowledge of agent should be notice to insurer, and which applies only to policies issued without medical examination, has no application to industrial life insurance policy sued on, which was issued after medical examination of applicant.

---

Action by Robert H. Shuff against the Life & Casualty Insurance Company of Tennessee. Judgment for defendant was affirmed by the Court of Appeal (6 La. App. 503), and plaintiff applies for a writ of review. Judgments of the district court and Court of Appeal affirmed.

Foster, Hall & Smith, of Shreveport, for relator.

Blanchard, Goldstein & Walker, of Shreveport, for respondent.

O'NIELL, C. J. This is a suit by the beneficiary named in a life insurance policy for $1,000 on the life of the plaintiff's son. The policy is called an *industrial limited payment life policy*, which means that the premiums were payable weekly for the limited period shown in the policy. The defendant pleaded that, on the date of the policy, as well as at the time when it was issued and delivered, the insured was not in sound health, and that the delivering of the policy in the circumstances in which it was delivered was done in collusion between the company's agent and the insured to defraud the company. The plea was founded upon two clauses or conditions printed in the policy contract, viz.:

(1) "No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health;" and (2) "agents (which term includes superintendents and assistant superintendents) are not authorized to make, alter, or discharge contracts or waive forfeitures."

The district court sustained the defense, and, on appeal to the Court of Appeal, the judgment was affirmed. The case is before us on a writ of review.

There is no dispute about the facts of the case. The insured was an agent of the company, and he and the agent, Roper, who took the application and delivered the policy, were not only solicitors for the same company, but were intimate friends and roommates. As each received as his commission the first fifteen premium payments on every policy he sold, they conceived the idea of writing each other; Roper writing this policy on Shuff's life and Shuff writing a policy on the life of Roper's child. The applications were signed on the 25th of November, 1922.

Shuff was then apparently in sound health, but a week later he became ill, and the next day, the 3d of December, he was taken to a sanitarium and operated on for acute appendicitis. On the next day, the 4th of December, the policy on Shuff's life, dated that day, was given to Roper for delivery, along with other policies on the lives of others whose applications had been taken by Roper and approved by the company. On the 8th of December, while Shuff was yet in bed in the sanitarium, Roper delivered the policy to him there, by handing it to Shuff's sister-in-law, at his request. On the 19th of December Shuff died of pneumonia and other complications following the operation.

Aside from the stipulation in the policy that no obligation was assumed by the company unless on the date of the policy the insured was alive and in sound health, the solicitors were under a strict rule of the company, as to which both Roper and Shuff were instructed by the district superintendent of the company, not to deliver a policy to any one not apparently in sound health. Roper's excuse for violating the instruction was that the attending physician, who had taken part in the operation on Shuff, told him (Roper), at the time when he delivered the policy, that Shuff was out of danger and might be taken home next day; but the physician, testifying as a witness in the case, denied that he had told Roper any such thing, and testified positively that Shuff was never out of danger at any time after the operation. There is no doubt that Shuff was not in sound health but seriously if not critically ill continuously from the day before the date of the policy until after it was delivered.

In Shuff's application for the policy, Roper, who signed the application as solicitor, declared that he had collected in advance two weekly premiums of $1 each; but the receipt book, attached to the policy, shows

that the two premiums were credited to Shuff on the 4th of December, the date of the policy; and the fact is that, as the first fifteen premiums went as commissions to the solicitors, respectively, the two advance premiums on Shuff's policy were paid by his giving Roper a corresponding credit on the receipt book attached to the policy on the life of Roper's child.

[1] It is not claimed on behalf of the plaintiff that the company's agent, Roper, pretended, at the time when he solicited the insurance, or when he credited the insured with the two premiums supposed to have been paid in advance, or at the time when he delivered the policy, that he had authority to waive the condition in the policy, that no obligation was assumed by the company unless on the date of the policy the insured was alive and in sound health. It is not claimed that the insured was induced to take out the insurance or to accept the policy by any promise or pretense of the agent, Roper, that he would or could procure the consent of the company to waive the condition that the insured should be in sound health on the date of the policy. The plaintiff urges and relies upon the proposition that the agent's knowledge that the insured was not in sound health on the date of the policy and at the time when it was delivered was notice to the company, and that the agent did in fact waive the condition that the insured should be in sound health, and that the company was thereby deprived of the protection of that condition stated in the policy. The plaintiff's contention, therefore, stated broadly, is that, even though the insured was aware that the agent had no authority to dispense with or to alter any of the conditions of the policy, nevertheless the agent could confer the authority upon himself by merely disregarding those conditions and limitations expressed in the contract and

known to the insured. The argument is not sound. It is the same as to say that it is not competent for an insurance company to protect itself against unauthorized acts of its agents by any condition or limitation of that kind expressed in its policy contracts. On the contrary, such limitations upon the authority of insurance agents are not only reasonable but absolutely necessary stipulations in a policy contract, to protect the investors of their money in such companies against unauthorized transactions between faithless or careless agents and unscrupulous or indifferent patrons. There is no reason of public policy why such conditions and limitations in a policy of insurance should be nullified by the courts, or be declared invalid, or be incompetent to protect either party to the contract.

This case is very similar in the principle involved, to that of Gardner v. North State Life Insurance Co., 163 N. C. 367, 79 S. E. 806, 48 L. R. A. (N. S.) 714, Ann. Cas. 1915B, 652, from which we quote one of the headnotes, viz.:

"Waiver of misrepresentation by an applicant for insurance that he had not been in contact with transmissible disease, or of the fact that he had typhoid fever when the policy was delivered, is not effected by delivery by an agent of the policy with knowledge that the applicant had been in contact with the disease and had himself contracted it, if there was a fraudulent or collusive agreement between the agent and the insured as to such delivery, or the insured had knowledge that the agent was delivering the policy without authority or contrary to instructions."

[2] We do not believe that either the agent or the insured, in this case, intended to defraud the company, for the insured was apparently in sound health when his application for insurance was accepted. It is more likely that both the agent and the insured believed, when the policy was delivered, that the insured would regain his sound health in consequence of the operation, and that

his illness at the date of the policy would cease to be a matter of importance. But the fact remains that the insured knew, when he received the policy, that the agent was delivering it without authority and contrary to instructions. There was, therefore, no deception or misrepresentation on the part of the agent.

[3, 4] When, in an insurance policy, it is declared to be the complete and only evidence of the contract between the company and the insured, there is no reason why any of its stipulations, if unambiguous and reasonable and such as the parties are competent to make, should not be as effective as they would be in any other instrument intended to be the only evidence of a certain contract. In every case where a court has held that an insurance agent could, in spite of a prohibition written in the policy, bind the company by his waiver of a stipulation written in the policy for the protection of the company, the decision was founded upon the finding or assumption that the insurance company was in the attitude of having held out to the insured or to the public that the agent had the authority assumed by him, so that the insured in such case was, through the fault of the company, led to believe that the agent had the authority to bind the company. But, when the company is not guilty of any deception or misrepresentation, either express or implied, and the agent does something in violation of a prohibition contained in the instrument in which it is declared that it constitutes the entire evidence of the contract between the company and the insured, the agent is acting for himself and not as agent of the company, and he alone, if any one, is answerable to the insured for the consequence of any such false pretense.

A complete review of the decisions and discussion of the subject may be found in Northern Assur. Co. v. Grand View Building Association, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, where it was held:

"An insurance company cannot be deemed to have waived a condition in a policy of fire insurance rendering it void in case other insurance had been or should be made upon the property unless by agreement indorsed thereon or attached thereto, because its agent had notice or knowledge of the existence of other insurance in another company, at the time he delivered the policy and received the premium, where such policy also provided that 'no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of the policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions or conditions no officer, agent, or representative shall have power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.'"

In the course of the opinion in the case cited, Mr. Justice Shiras, for the court, referred to certain rulings by the New York Court of Appeals, which seemed to depart from the generally accepted principle and to maintain that the restrictions in an insurance policy, forbidding the agent to waive any condition of the contract, did not apply to conditions or facts prevailing at the time of the issuing or delivering of the policy; and, speaking of "the fallacy of this view," the court said:

"It was thereby assumed that the agent had full knowledge of all the facts, that such knowledge must be deemed to have been disclosed by the agent to his principal, and, that consequently it would operate as a fraud upon the assured to plead a breach of the conditions. This mode of reasoning overlooks both the general principle that a written contract cannot be varied or defeated by parol evidence, and the express provision that no waiver shall be made by the agent except in writing indorsed on the policy. As we shall hereafter show when we come to consider the meaning and legal purport of the contract in suit, such express provision was intended to protect both parties from the dangers involved in disregarding the rule of evidence. The mischief is the same whether the condition turned upon facts existing at and before the time when the contract was made, or upon facts subsequently taking place."

In Equitable Real Estate Co. v. National Surety Co., 133 La. 448, 63 So. 104, the contractors who had constructed a building claimed an allowance for demurrage, on account of delays alleged to have been caused by the fault of the architect, and in spite of a stipulation in the contract that no such allowance should be made unless a claim therefor was presented in writing to the architect within 48 hours of the occurrence of the delay; but the court enforced the stipulation and rejected the contractors' claim, and, through Chief Justice Monroe, said:

"It is admitted that no written claim for an extension of time was made during the execution of the contract; but it is argued, upon the basis of the testimony to which we have referred, that the contractors were delayed by the architect, and thereby became entitled to an extension of time exceeding that for which the demurrage is claimed, and that an allowance on that account should now be made by the court, The function of the court, however, is to interpret· the contract, where interpretation is required, and otherwise to enforce it as written, and the stipulation that no allowance of time shall be made 'unless a claim therefor is presented, in writing, to the architect, within forty-eight hours of the occurrence of the delay,' requires no interpretation, but is to be enforced as written, from which it follows that, in view of the admission that no claim in writing was made as thus provided, the testimony offered to prove merely that delays occurred, upon which such claims might. have been predicated, was irrelevant and should have been excluded on plaintiffs' objection."

In Dominick v. Detroit Fire & Marine Insurance Co., 147 La. 549, 85 So. 236, it was held:

"Under policy forbidding waiver of provisions by agents unless indorsed on policy or added thereto, there can be no recovery by insured violating 10-day vacancy clause on showing of an oral agreement of agent that it was all right, and that he would take care of the matter; no vacancy permit being indorsed on or attached to policy."

. In the course of the opinion in that case ·the court cited with approval People's Bank v. National Fire Insurance Co., 130 La. 951, 58 So. 826, and said that there was no decision of this court to the contrary, "nor even any dictum of any kind," unless perhaps the one in Chapman v. Mutual Life Insurance Co., 146 La. 658, 83 So. 887, "which was pure obiter," said the court.

The plaintiff cites and relies upon the decision in Gitz Sash Factory v. Union Insurance Soc., 160 La. 381, 107 So. 232. The ruling in that case, by a majority of the members of the court, was founded, in some measure at least, upon the fact that the agent who wrote the policy was a general agent of the company, and upon the assumption, therefore, that he had authority to bind the company by a verbal waiver of a condition in the policy; hence it was held, in the majority opinion, that to absolve the company from liability for the acts of its general agent would permit a fraud upon the rights of the insured. It is sufficient to say that the decision rendered in that case is not a precedent for our ruling in this case.

[5] There is a statute (Act 52 of 1906, as amended by Act 227 of 1916), which declares that every policy of insurance issued by a life insurance company doing business in this state "shall contain the entire contract between the parties." The statute was intended, manifestly, not so much to protect the insurance companies as to protect the policy holders; for the statute goes further and provides that nothing shall be incorporated in any life insurance policy by reference to any constitution, or by-laws, or rules, or the application for insurance, or any other writing, unless the same be indorsed upon or attached to the policy when issued; that all statements purporting to have been made by the insured shall, in the absence of fraud, be deemed representations and not· warranties; that no statement or statements shall ·be used in defense of a claim under the policy unless contained in a written application

and unless indorsed upon or attached to the policy when issued; and that any waiver of the provisions of the statute shall be void. There is no reason, however, why the statute, in so far as it declares that every life insurance policy shall constitute or contain the entire contract between the parties, should not be as effective in forbidding the insured as in forbidding the company to contradict the written instrument by parol or other extrinsic evidence. In Fisette v. Mutual Life Insurance Co., 162 La. 620, 110 So. 880, it was held that the act of 1916 was applicable as well to statements made in an application to establish a policy, or to place it in force after a failure to pay the premium within the time required, as to statements made in the original application for insurance.

[6] If the policy in this case had been issued without a medical examination, the Act 97 of 1908 would be very favorable to the plaintiff; for the statute declares that in such cases, if the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, such knowledge of the agent who wrote the application, or of the collector of the premiums from the insured, shall be imputed as notice to the company, as to the health, habits, or occupation of the insured. See Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464. But the act of 1908 is not applicable to this case, because, by its title as well as its text, it applies only to companies issuing policies of insurance without a medical examination; and the policy sued on was issued after a medical examination of the applicant.

The judgment of the district court and of the Court of Appeal is affirmed.

OVERTON and LAND, JJ., concur in decree.