## PETERSON v. PACIFIC FIRE INS. CO. OF NEW YORK.*
### No. 14572.

Court of Appeal of Louisiana. Orleans. May 22, 1933.

Deutsch & Kerrigan & Burke, of New Orleans, for appellant.

Dresner & Dresner, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit on a policy of fire insurance covering household effects. From a judgment in favor of plaintiff, defendant prosecutes this appeal.

Joseph Peterson, plaintiff herein, obtained a policy of fire insurance from the defendant corporation on January 6, 1932. The policy was issued without any formal application blank having been executed or any inquiry made concerning the incumbrance of the household effects, the subject of the insurance. A little more than one month later all of the property insured by the policy was destroyed by fire. An adjuster of the defendant called upon plaintiff and agreed with him that the loss, after deduction of depreciation, should be fixed at the sum of $947.21, which was about one-half the purchase price of the property. According to plaintiff, an agreement was made to settle the loss within ten days, but this is denied by the adjuster, and the fact is not of importance. A few days later defendant's adjuster called upon plaintiff, and inquired whether there was a chattel mortgage on the insured property, and was informed that there was such a mortgage for the sum of $300, bearing upon about one-third of the property. The insurance company, defendant, thereupon refused to pay the loss upon the ground that a provision in the policy provided that, if the property insured be or become incumbered, the policy would, ipso facto, be annulled. The provision of the policy referred to reads as follows: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property and be or become encumbered by a chattel mortgage."

The good faith of plaintiff is not questioned; the sole reliance of defendant being upon the quoted forfeiture clause in its policy. Plaintiff calls our attention to the provisions of Act No. 222 of 1928 to the effect that no policy of fire insurance on property in this state shall be declared void for the breach of any representation or warranty in the policy or application, unless such breach exist at the time of the loss, and shall be "such a breach as would increase either the moral or physical hazard under the policy." Counsel for plaintiff contends, in the first place, that defendant has failed to aver that the breach of the mortgage clause of plaintiff's policy increased the moral or physical hazard, and that, therefore, all proof relative to a chattel mortgage is inadmissible; and, secondly, that the failure of the defendant insurance company to make inquiry concerning the existence of the chattel mortgage at the time the policy was issued amounted to a waiver of the mortgage clause, and, finally, that the mere fact that the property has been mortgaged is not sufficient to establish an increase in hazard, the question of wheth-

*Rehearing denied June 29, 1933.

er the hazard has been increased being one of fact dependent upon the special circumstances in each case, and, there being no evidence in this case tending to show that there was any increase in the hazard, this defense must fail.

On the first point raised by plaintiff we notice that the defendant evidently, without having the act of 1928 in mind when the answer was prepared, simply sets up a breach of the mortgage clause and claims a forfeiture in accordance with the terms of the policy; there being no reference to the fact that the alleged breach amounted to an increase in hazard. The position of plaintiff is that there must necessarily be an allegation to the effect that the hazard has been increased, because it is only in that event that a breach of warranty under the act of 1928 can be regarded as a forfeiture; the question of whether a breach constituted an increase in hazard being one of fact, which must be specially pleaded. In support of this proposition we are referred to Sigrest v. Federal Ins. Co., 14 La. App. 55, 129 So. 379, which is authority for the proposition advanced, but in that case the alleged breach of warranty claimed to constitute an increase in hazard related to a physical hazard, whereas, in the case before us, the alleged increase was in the moral hazard, a distinction which we regard as of importance. The question of whether there is an increase in the physical hazard may well be considered a question of fact to be alleged and proved like any other fact in a case, but the same is not true of a moral hazard, for a state of mind is not susceptible of evidentiary proof, and, we believe, it is sufficient to allege the fact of the existence of the mortgage and to argue therefrom that the moral hazard has been increased, since there is no other fact that could be alleged or proven which would be of any assistance in reaching a conclusion that the hazard had been increased. So that we conclude, on this point, that the pleadings were sufficient to permit proof of the existence of the chattel mortgage.

The second contention to the effect that the policy provision relied upon had been waived is supported by numerous authorities mentioned in plaintiff's brief: Corpus Juris, vol. 26, p. 318; Ruling Case Law, vol. 14, p. 1186, note 2, and many therein cited. But, when we come to examine the jurisprudence in Louisiana, we find that a different view obtains. In the case of Gitz Sash Factory v. Union Ins. Co., 160 La. 381, 107 So. 232, 233, a case relied upon by plaintiff, we find the following: "The decisions of the Supreme Court of this state are in line with the jurisprudence of a majority of the states of the Union, as to the application of the doctrine of waiver by the conduct and declarations of insurance companies, and as to the

proof of estoppel by parol, notwithstanding the provisions contained in the policy requiring written evidence as to waiver. Corporation of Roman Catholic Church v. Royal Ins. Co., 158 La. 602, 104 So. 383; Brodie v. Atlas Assurance Co., 158 La. 695, 104 So. 620; Gaudet v. North River Ins. Co., 156 La. 719, 101 So. 118; Investors' Mortgage Co. v. Marine & Motor Ins. Co., 155 La. 627, 99 So. 486 (on rehearing); Bank v. Manhattan Ins. Co., 52 La. Ann. 46, 48, 26 So. 800."

That case is authority for the proposition that the written provisions of the policy may be waived by parol, and it held the insurance company responsible for knowledge of its agent concerning the existence of a chattel mortgage, but the case does not hold in line with the common-law authorities that, "if an insurance company elects to issue its policy of insurance against a loss by fire without a written application, and without any representation or inquiry in regard to title or encumbrances, it cannot complain, after a loss has occurred, that an existing encumbrance was not disclosed. * * * In other words, the insurer is deemed by its action to have consented to assume the risk of such liens and encumbrances as may have been upon the property, and to that extent to have modified or suspended the printed terms of the policy which was prepared for general use, without reference to the particular case." 26 Corpus Juris, p. 318, § 391.

In St. Landry Wholesale Mer. Co. v. New Hampshire Fire Ins. Co., 114 La. 146, 38 So. 87, 89, 3 Ann. Cas. 821, the court held that, since the adoption of Act No. 105 of 1898, prohibiting the issuance of policies on property in this state in any other form than that of the New York standard form of fire insurance policies, copied in the statute, there was no reason why a court, in interpreting insurance contracts, should lean one way or the other, and that, adopting the language of the court in Dumas v. Northwestern Nat. Ins. Co., 12 App. D. C. 245, 40 L. R. A. 358, "an express condition that a policy shall be void if the insured is not the sole and unconditional owner of the property, or if it is mortgaged, will render it void if the conditions are broken, even if the insured made no representations as to the property or any fraudulent concealment of the facts." See, also, Shuff v. Life & Casualty Co., 164 La. 742, 114 So. 637.

Our conclusion on the question of waiver, therefore, is that under the jurisprudence of this state the failure to make inquiry concerning the existence of the mortgage does not operate as a waiver of the printed stipulations in the policy.

The final contention of plaintiff is that the mortgage in this case did not increase the moral hazard, and therefore, in view of the provisions of the act of 1928, the breach of

the conditions of the policy cannot work a forfeiture.

There are many cases which hold that the existence of a mortgage upon insured property ipso facto increases the moral hazard. Heliotos v. Great American Ins. Co. of N. Y., 103 N. J. Law, 529, 138 A. 97; McGowan v. People's Mutual Fire Ins. Co., 54 Vt. 211, 41 Am. Rep. 843; Brooks v. Liverpool & L. & G. Ins. Co. (La. App.) 144 So. 788. In Lee v. Agricultural Ins. Co., 79 Iowa, 379, 44 N. W. 683, 684, the court said: "The giving of the chattel mortgage is, beyond question, an increase of the risk, and a decrease of the defendant's security, because thereby the assured lessened his interest in the insured property."

In the opinion of the writer, at least, there is much doubt as to whether a mortgage on insured property increases the moral hazard. In Couch on Insurance, p. 3312, § 960, we find a definition of moral hazard as: " * * * The risk, danger, or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance, and any change in the insured or the insured property that will increase the probability of such a destruction increases the moral hazard; * * *."

To the same effect see Davenport v. Firemen's Ins. Co., 47 S. D. 426, 199 N. W. 203. Accepting this definition of Mr. Couch as correct, does a mortgage increase the temptation of the insured to destroy his property? Policyholders are either honest or dishonest. No honest policyholder would burn his property to defraud an insurance company, whether it be incumbered or not. It is only the dishonest policyholder that would perpetrate such a fraud, but why would a dishonest policyholder be more inclined to burn property that is mortgaged than he would property that is unincumbered? Is it for the purpose of paying his mortgage creditor? We think not; for such motive would be inconsistent with his immoral character. The incentive to pay honest debts would be absent. His purpose in destroying the property, in committing a crime, is the usual criminal motive, a desire for gain; to get something for nothing; and, in order to do so, he is willing to take the chance of detection and punishment. It is obvious that more money can be obtained with less risk by burning unincumbered property than by destroying incumbered property, because, if an attempt is made to defraud a mortgage creditor as well as an insurance company, the risk of detection is greatly increased, and, if the mortgage creditor be paid out of the proceeds of the unlawful act, his gain is diminished to that extent, so that he has more to gain, and less to risk, by burning unmortgaged property. But it is said that a mortgage upon property causes an otherwise honest man to become dishonest when his financial situation is such that he cannot satisfy the demands of the mortgage creditor and is threatened with the loss of his property by foreclosure. There may have been instances where mortgages have destroyed the character of policyholders to this extent, but they must certainly be very rare and the character of the individuals concerned very weak.

■ But, for the sake of argument, let us admit that the apparently preponderating view is correct, and that a mere mortgage does increase the moral hazard. The next question which then naturally presents itself is: What sort of a mortgage? One bearing upon all of the property for all of its value, or one for only a fraction thereof, and, if a fraction, what fraction; or a mortgage which covers a part of the property for its entire value, or for only a fraction thereof? Certainly it cannot be said that a very small mortgage on a very large amount of property would increase the moral hazard. For example, a mortgage of $100 on $1,000 worth of property would hardly stimulate any latent criminal inclinations. Can it be said, for example, that any mortgage exceeding by one-half the value of the property would increase the moral hazard, whereas one for less than that fraction would not? It has been held that a mortgage covering all of the property for one-fourth of its value is not sufficient. Godfrey v. Security Ins. Co. (La. App.) 147 So. 101. And our Chief Justice, in Roach v. Harmonia Fire Ins. Co., 176 La. 356, 145 So. 769, 770, said that it was doubtful whether the moral hazard was increased in a case "where the value of the property exceeds by nearly one-fourth the amount of the insurance, and where the amount of the debt secured by the chattel mortgage is not more than a twentieth of the value of the property." In Tennessee the jurisprudence is firmly established to the effect that a mortgage of any kind for a whole or a part does not increase the moral hazard. See Sims v. American Central Ins. Co. (C. C. A.) 296 F. 115, where the jurisprudence on the subject was reviewed by the federal court. In the case before us only one-third of the adjusted value and one-sixth of the purchase price of the property was incumbered by a mortgage. Whether a mortgage on such a fraction of the total value of the property insured would increase the moral hazard is an interesting question, but one which, fortunately, we need not consider. Whether it be an increase in the moral hazard or not, it is our opinion that a mortgage upon a part of the property insured is not a breach of the mortgage forfeiture clause of the policy sued on, and therefore the question of whether the moral hazard be increased or not is immaterial. It will be recalled that the forfeiture clause relied upon by defendant reads as follows: "This entire policy

* * * shall be void * * * if the subject of insurance be personal property and be or become encumbered by a chattel mortgage."

The meaning of the clause "if the subject of insurance * * * be or become encumbered" is important. Is it intended that any mortgage for any amount on any part of the insured property shall work a forfeiture, or that only such mortgage as incumbers the entire amount of the property insured shall have that effect? The latter is, undoubtedly, the proper interpretation, in view of the other provisions of the policy working a forfeiture, which are careful to provide that the policy shall be void under the conditions mentioned when the insured property is affected "in whole or in part." For example: "This entire policy * * * shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment and it be operated in whole or in part at night later than ten o'clock."

In the situation mentioned, where other insurance has been placed upon the property, and where manufacturing companies work later than 10 o'clock at night, the policy is void when the property, "in whole or in part," is affected by other insurance, and when the manufacturing establishment is operated "in whole or in part" later than 10 o'clock. But the forfeiture clause relative to the chattel mortgage provides that the policy shall be void "if the subject of insurance be * * * or become encumbered by a chattel mortgage."

In Western Assurance Company v. Bronstein, 77 Colo. 408, 236 P. 1013, 1015, the identical clause was under consideration. The court there pointed out the difference in the forfeiture clauses, saying: "It will be observed that the clause against additional insurance makes the entire policy void, if the property covered by the policy, either in whole or in part shall be reinsured, while the clause against an incumbrance by a chattel mortgage makes the policy void only if 'the subject of insurance,' not merely a part of it, is incumbered," and held that an incumbrance of a part of the insured property was not an incumbrance of "the subject of insurance, not all of it."

Ransom v. Potomac Ins. Co. of D. C., 226 Mo. App. 664, 45 S.W.(2d) pp. 95, 98, was a case strikingly similar to the one before us. There the subject of insurance was personal property and household goods. There was a chattel mortgage for $150 on certain specifically described articles of household furniture and "any other household goods he may have not mentioned here." The fire insurance policy was for $1,500 on household and personal effects, and contained the exact clause we are now considering. The court, after pointing out that forfeitures are not favored in law, said:

"The subject of insurance in the instant case is 'household and personal effects.' Personal effects are as much a part of the subject of insurance as any other property covered by the policy. Personal effects other than household goods were not included in the chattel mortgage. The company in preparing its policy selected the words by which it sought protection against liability in case of incumbrance. The words which it selected afford protection against liability if the subject of insurance be incumbered. The words 'subject of insurance' are unqualified and must be held to mean the whole subject of insurance and not merely a part of the property insured. In order to render the condition of the policy effective under the facts in this case, it would be necessary to supply something not expressed in the condition and cause it to read that the policy would be void 'if the subject of insurance, or any part thereof, be or become incumbered by a chattel mortgage.'"

The court concludes with the statement that the subject is new in Missouri jurisprudence, but is well established in other states of the Union, a statement which is applicable to the situation obtaining here, and reads as follows: "So far as we are aware, the precise question with which we are dealing, and arising upon similar provisions in insurance policies, has not been presented to or determined by any appellate court of this state. However, the rule of decision in other states and the current of authority, well supported by reason, is to the effect that a chattel mortgage executed upon a part of the 'subject of insurance' does not defeat coverage under a condition of the policy providing that it shall be void 'if the subject of insurance be personal property and be or become incumbered by a chattel mortgage.' Western Co. v. Bronstein, 77 Colo. 408, 412, 236 P. 1013, 1015; Merchants' Ins. Co. v. Harris, 51 Colo. 95, 112, 116 P. 143; Born v. Home Ins. Co., 110 Iowa, 379, 383, 81 N. W. 676, 80 Am. St. Rep. 300; Fitzgibbons v. Ins. Co., 126 Iowa, 52, 55, 101 N. W. 454, 455, 70 L. R. A. 243; Phenix Ins. Co. v. Lorenz, 7 Ind. App. 266, 33 N. E. 444, 34 N. E. 495; Id. (Ind. App.) 29 N. E. 604; Bailey v. Homestead Fire Ins. Co., 16 Hun (N. Y.) 503; Sullivan v. Town Mutual Ins. Co., 20 Okl. 460, 94 P. 676, 681, 129 Am. St. Rep. 761; Mecca Fire Ins. Co. v. Wilderspin (Tex. Civ. App.) 118 S. W. 1131, and cases cited; 26 C. J. page 185, § 226."

Plaintiff has prayed for attorney's fees and statutory penalty provided by Act No. 168 of 1908. Bell v. Security Ins. Co., 175 La. 599, 143 So. 705. By admission dictated into the record, it was agreed that an allowance of $200 for the plaintiff's attorney's

services in the trial court would be reasonable. An additional $100 is asked for services in this court, and we consider this amount to be reasonable also. Act No. 168 of 1908 provides for a penalty of 12 per cent.

For the reasons assigned, the judgment appealed from is amended so as to read as follows: "It is ordered, adjudged and decreed, that there be judgment herein, in favor of the plaintiff, Joseph S. Peterson, and against the defendant, Pacific Fire Insurance Company of New York, in the full sum of $947.-21, and an additional 12 per cent. as damages, with legal interest on $947.21 from judicial demand until paid, together with $300.-00 as attorney's fees and all costs."

Amended and affirmed.

JANVIER, J., takes no part.