LEAR, Judge.
Petitioner asks for recovery in the sum of $500.00, which is the base amount of a life insurance policy alleged to have been issued by the defendant on the life of one Ebra Aucoin, brother of petitioner. She alleges that she was beneficiary under said contract of insurance, and that due proof of the death of the insured on September 13, 1966, was properly presented to the defendant, but that despite petitioner’s interest and notice of death defendant refuses to pay in accordance with its purported obligation.
Defendant answered, admitting issuing a policy on the life of the said Ebra Aucoin in the amount of $500.00, but calls for strict proof of all the provisions, terms and conditions thereof by production of the written instrument itself. Defendant admits receiving proof of death of decedent, but denied that a valid contract between the parties was in force and effect at the time of the insured’s death.
Further answering the petition, defendant alleges that negative answers were given to two questions on the application for this policy. They are:
“Question 11: Has Proposed Insured ever had tuberculosis, asthma, any disease of lungs, apoplexy, paralysis, heart disease, high blood pressure, mental or nervous disorder, epilepsy, convulsions, syphilis, rheumatism, arthritis, rupture, disease of circulatory system, stomach, intestines, liver, gallbladder, kidneys, rectum, bladder, prostate, or thyroid gland, sugar albumin or blood in urine, diabetes, cancer, tumor, ulcer, impaired sight or hearing, any amputation, deformity, operation?
“Question 12: Give details of questions answered ‘yes’ above and of all illnesses in last five years.”
Defendant contends in its answer that the applicant for the policy sued upon warranted the truthfulness of the foregoing answers, and acknowledged that the basis for the issuance of the policy was predicated upon the truthfulness and the correctness thereof. It shows that the application for the policy was made May 18, 1966.
Further answering, defendant shows on information and belief that the named assured was confined to the Veterans Hospital of Alexandria, Louisiana, from April 27, 1966, through June 20, 1966, with serious ill* ness involving myocardial infarction, acute coronary thrombosis and arteriosclerosis. It alleges that if the true physical condition of the named insured had been disclosed, defendant would not have issued the policy sued upon.
*705 Defendant further pleads in exoneration of any liability a provision of the policy which reads as follows:
“1. Preliminary Provisions — This Policy shall not take effect if the Insured dies before the date hereof, or if on such date at the time of delivery of the Policy, the Insured be not in sound health, but in either event the premiums paid hereof, if any, shall be returned”.
Defendant then paid into the registry of the court the sum of $7.75, representing premiums paid on said policy and asked for a rejection of the demands of the plaintiff.
Petitioner then amended and supplemented her original petition alleging that defendant’s refusal to pay was arbitrary and capricious, and asked for statutory penalties and attorney’s fees.
In answer to the amended and supplemental petition, defendant urges its good faith in rejecting the demand of petitioner, and reiterates all of the defenses pleaded in the original answer.
The policy was introduced in evidence and showed itself to be a straight life policy issued in the amount alleged on the life of the person alleged and payable to the petitioner, as beneficiary, and containing the provision as set forth in defendant’s answer.
The application for the policy is dated May 5, 1966, and does contain what purports to be the signature of Ebra Aucoin, and does show the negative response to the questions quoted above.
The death certificate of Ebra Aucoin, also introduced in evidence, showed the cause of death as myocardial infarction brought about by an acute coronary thrombosis and giving as the underlying cause the arteriosclerosis suffered by decedent. The records of the Veterans Administration Hospital show that on May 2, 1966, Mr. Au-coin agreed to the performance upon himself of an aortogram; that on May 5, 1966, he consented to the performance of a bilateral femoral arteriogram; that ov May 10, 1966, he consented to a repeat aortogram and on May 11, 1966, consented to the performance of a bilateral open femoral angio-gram. It is to be noted that these tests were being conducted upon the person of the deceased prior to the signing of the application for the policy in question.
On the trial of the merits, one Percy Jar-reau, evidently the manager of the defendant’s Opelousas branch, was called to the stand to identify the policy; to admit that a proof of loss was submitted to the company and that the premiums on said policy had been paid in regular fashion.
Petitioner was then placed upon the stand, testifying that the named assured was her brother, and that he had died on September 13, 1966.
In describing the issuance of this particular policy, she testified that one James Guidry, an agent for defendant, had come to her home to collect premiums on other policies that she held. She stated that on May 18, he offered to sell her a life insurance policy for her brother, who admittedly was not in the house, but was in Alexandria, Louisiana, at the time. She testified that the agent told her it was all right for her to sign her brother’s name to this application. She stated that she did not fill in the application, merely signed it. However, she did admit that Guidry had asked her if the decedent had had any serious illnesses in the year previous, and she stated that her brother had suffered a rupture. She admits that her brother knew nothing of the transaction and that she paid all premiums on said policy.
It appears that after the operations undergone by decedent in Alexandria in May of 1966, he returned to his sister’s home and was present there at times when defendant’s agents came to collect premiums on this policy. She testified that on those occasions, the decedent showed the scars of his operations to these agents and made known to them that he had undergone certain artery transplants.
*706 She further testified that she had followed this same procedure in obtaining a life insurance policy on the life of another brother named Elton Aucoin, dealing with the same company and same agents.
She further testified that after her brother’s death, Guidry obtained her premium receipt book, stating that the company needed it to pay the claim. She testified that upon seeing that receipt book on the morning of the trial, she was surprised to see a notation to the effect that a premium had been paid after Ebra Aucoin had died. She denied making this payment.
On cross-examination plaintiff testified that on the date the policy application was filled out that her brother was in the hospital in Alexandria, and that she had so notified the agent. She admitted that she informed the agent her brother had gone to the hospital for a “physical checkup”. She further admitted that her brother was hospitalized off and on from April through July of 1966, but she denied that Mr. Guidry read to her Question 11 quoted above, or that he asked her whether her brother was in good health.
Percy Jarreau was recalled to the witness stand and testified that as district manager of the defendant, he had the authority to reject applications for insurance and would have rejected any application filed at a time when the prospective assured was hospitalized with any serious complaint.
James Guidry, the agent who took the application, testified that he did indeed see petitioner sign her brother’s name to the application, but stated that prior to his acceptance thereof she had told him that her brother was working and was in good health. He further denied that she had told him that her brother had suffered a rupture. He admits that he falsified the application when he noted thereon that he saw the applicant affix his (applicant’s) signature.
At the conclusion of the trial, judgment was rendered as prayed for on the main demand, but no mention was made of penalties or attorney’s fees. Thereupon, the defendant took an appeal to this court and petitioner answered the appeal asking that the award be increased to include penalties and attorney’s fees.
Relying upon language in Frugé v. Woodmen of World Life Insurance Society, La.App., 170 So.2d 539, and Roy v. Trans-World Life Ins. Co., La.App., 199 So.2d 416, petitioner argues strongly that, since the named assured was not present at the execution of the application herein and, in fact, knew nothing of it, then he could certainly be guilty of no misrepresentation, fraud or bad faith. This is necessarily true, but we think that it gives little comfort to petitioner’s position in the case at bar.
If we follow plaintiff’s reasoning, we must conclude that she is arguing that this is a contract between the decedent and the defendant insurance company. To so hold, it would be necessary to conclude that there was no contract at all because there was no meeting of the minds between Ebra Aucoin and the defendant company. It cannot be denied that a policy of insurance is a contract between the parties, and in order to have a contract there must be at least two or more parties and some modicum of understanding between them. Both of these factors would be entirely lacking if this policy were attempted to be defined as a contract between Ebra Aucoin and defendant.
In addition thereto, defendant is relieved from liability because of the language in the policy quoted above entitled “Preliminary Provisions”. This language clearly shows an intention on the part of the insurer to make as a condition precedent to the viability of this contract delivery of the policy at a time when the insured was in sound health.
Shuff v. Life & Casualty Ins. Co., 164 La. 741, 114 So. 637, followed by Pruitt v. Great Southern Life Ins. Co., 202 La. 527, 12 So.2d 261, and Matthews v. National Life & Accident Ins. Co., La.App., 88 So.2d *707 454, all hold the enforceability of such a provision in a life insurance contract.
When we consider the recitation of the decedent’s hospital experience in May of 1966, coupled with the evidence that on the very day this policy was issued he underwent a very serious aorta transplant designed to alleviate the arteriosclerosis which later proved to be the underlying cause of his death some three months later, it can hardly be gainsaid that an individual convalescing from an operation of that magnitude and severity was enjoying sound health at the time of the delivery of the policy.
For the reasons above assigned, the judgment of the trial court is reversed, and this suit ordered dismissed, with petitioner to bear all costs unless relieved therefrom by the order allowing her to institute and prosecute this action in forma pauperis.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.