245 So.2d 531 (1971)
Theresa M. DUCOTE et al., Plaintiffs-Appellees,
v.
LIFE INSURANCE COMPANY OF LOUISIANA, Defendant-Appellant.
No. 3304.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1971.
Rehearing Denied March 31, 1971.
*532 Nelson & Evans, by William C. Clark, Shreveport, for defendant-appellant.
*533 Roy & Roy, by A. J. Roy, Jr., Marksville, for plaintiffs-appellees.
Before FRUGÉ, SAVOY and DOMENGEAUX, JJ.
FRUGÉ, Judge.
This suit was filed by Mrs. Theresa M. Ducote, individually and as Tutrix of her minor sons, Dan Ducote and Dale Ducote. Mrs. Dina Ducote Guillot, a major daughter of Theresa and Allen J. Ducote, also joined as plaintiff. This suit seeks to recover $10,000 under four credit life insurance certificates issued on the life of Allen J. Ducote. The certificates in question were issued by the defendant's agent of the Avoyelles Trust and Savings Bank of Bunkie, Louisiana. Following a trial on the merits, judgment was entered in favor of plaintiffs in the sum of $10,000 plus interest.
The facts of this case are that the deceased, Allen Ducote, and his wife made application for a loan to build a new home with the Avoyelles Trust and Savings Bank. The application was approved on November 4, 1969, and Mr. and Mrs. Ducote executed a note secured by a collateral mortgage note in the sum of $10,000. As they would need funds from time to time in the building of their home, it was understood that they would sign a hand note for the amount needed and interest would be charged on the funds actually drawn and from the date actually drawn. Formal papers were signed in accordance with the Truth and Lending Act and the debtors signed a $100 hand note which was deposited to their account to make official the actual closing of the loan papers to begin the three day waiting period under the Truth and Lending Act. The plaintiffs did not take out credit life insurance at the time of the signing of the note.
They began building their new home and executed hand notes for withdrawals on the original loan of: $2,000 on November 17, 1969; $4,000 on November 28, 1969; $2,000 on December 24, 1969; $2,000 on January 14, 1970. The hand notes were secured by the original collateral note and mortgage.
In the meantime, on December 19, 1969, Allen Ducote was hospitalized with a heart attack. The bank cashier, Mr. Jeansonne, had been informed by Mrs. Ducote of the hospitalization and the doctor's diagnosis of a heart attack. The bank sent flowers to Mr. Ducote, and the cashier assured Mrs. Ducote that the doctor was probably wrong and that he did not believe it was a heart attack. Doctors had previously told him, the cashier, Nathan Jeansonne, when he had experienced pains in his chest, that he had had a heart attack and this was subsequently found to be incorrect. She was told that this would not affect their loans.
On January 16, 1970, Mr. Jeansonne went to the Ducote home, discussed the amount that the credit life insurance would cost, and she wrote him out a check for the premium and he accepted it. There was no formal application, no questionnaire, no medical examination, and no conversation as to the state of Mr. Ducote's health, which was already known to Mr. Jeansonne.
The four credit life certificates were subsequently issued on the life of Allen J. Ducote on January 20, 1970. Ducote continued to rest at home and improve following the heart attack. On February 3, 1970, his doctor pronounced him completely recovered and said he was able to return to his usual work as a farmer. The next day, February 4, after having unloaded sacks of feed, he complained of chest pains, was taken to the hospital and died of a heart attack.
Shortly thereafter, the bank telephoned the defendant to inform them of the death of Allen Ducote. Thereafter, claim was made for payment on the four credit life certificates. The defendant formally rejected the application and the claims, and returned the premium it had received.
*534 Appellants contend that the trial judge erred in failing to find that the credit life certificates were issued on the basis of fraudulent misrepresentations made by the Ducotes.
The trial judge stated in his written reasons for judgment:
"There is no question of misrepresentations. There were none; there was no written application by the insured; there were no questions or answers; the bank cashier had all the information necessary he said. The Court cannot but take the view, that the bank cashier knew and was fully aware of Ducote's heart attack and that the insurance certificates were issued despite this knowledge * * *"
There is no error in this finding considering all the facts and circumstances of this case.
The appellant contends that the following condition clearly printed on the reverse side of the certificates in question prevented the certificates from ever becoming effective. The condition was that:
"The insured above must be alive, in sound health and gainfully employed before the benefits of this certificate may be attached."
Appellants argue that since Mr. Ducote was not in "sound health", having previously suffered a heart attack, that this clause prevented the insurance from ever coming into effect.
In support of its contention, appellant cites numerous cases which have considered the effect and validity of such a "sound health" clause. The cases cited include Aucoin v. First National Life Insurance Co., 204 So.2d 703 (La.App. 3rd Cir., 1967); Fournier v. Gulfco Life Insurance Co., 241 So.2d 287 (La.App. 1st Cir., 1970); Matthews v. National Life and Accident Insurance Co., 88 So.2d 454 (La. App. 2nd Cir., 1956); Shuff v. Life and Casualty Insurance Co., 164 La. 741, 114 So. 637 (1927); and Pruitt v. Great Southern Life Insurance Co., 202 La. 527, 12 So.2d 261 (1942).
None of these cases, however, deal with the precise situation involved in the instant case. In Aucoin, for example, the beneficiary falsely answered questions relating to the health of the insured, and thus, that decision properly rests upon a finding of a misrepresentation of a material fact. In Fournier, the court stated:
"It is stipulated that plaintiff knew that her husband was fatally ill prior to the issuance of the policy, and that defendant would not have written the policy had it known that fact." 241 So.2d 287, 288 (La.App. 1st Cir., 1970).
Matthews involved a factual situation in which false answers were admittedly made on the application for industrial life insurance. Similarly, in Shuff, false answers were given on a required application for industrial life insurance. In Pruitt, the insurance never came into effect because the insured died prior to the date of delivery of the policy of insurance. This same question has been recently considered by the First Circuit in Audubon Life Insurance Co. v. Lauzervich, 242 So.2d 589 (La.App. 1st Cir., 1970). In that case, the insured was admittedly suffering from leukemia at the time the credit life insurance was issued, and the policy stated that:
"The debtor is not eligible for insurance hereunder, unless on the effective date hereof the Debtor is alive and in sound health."
The insured died of complications resulting from leukemia some three months later. The court stated in Audubon that medical evidence admitted in the case, made it clear that persons suffering with leukemia of the type with which the debtor in that case was afflicted, could not be considered in "sound health".
In the instant case, no misrepresentation was involved, nor were any false statements ever made. In fact, the trial court found that Mrs. Ducote fully apprised the *535 insurer's agent, the bank, of all facts concerning Mr. Ducote's health. The agent presumably concluded that Mr. Ducote was, nonetheless, in sound health under its working definition of that term. The Ducotes relied upon this representation and continued to execute notes until the full amount of the collateral mortgage was exhausted. Again relying upon the agent's representations, the Ducotes did not seek to secure insurance from any other source, but paid the premiums for the credit life insurance in question here. The Ducotes relied upon the representations made by the insurer's agent, and as the plaintiff timely filed a special plea of estoppel and detrimental reliance, we concluded that the insurer is estopped now to deny coverage under the policy in question.
Additionally, we point out that the statement upon which the appellant relies in denying coverage under the policy states that the insured must be in sound health before the benefits may be attached. As stated previously, on February 3, 1970, after the policy was issued, Mr. Ducote's doctor pronounced him fully recovered from his heart attack and able to return to his normal activities as a farmer. At the very least, at that time, according to the best medical opinion available, Mr. Ducote was "in sound health". Thus, even if Mr. Ducote was not in sound health at the time the policy was issued, nonetheless, he subsequently recovered fully, and at that time the benefits of the policies presumably would have attached.
We hold, therefore, that the benefits and coverage of the credit life insurance certificates in question did attach and the certificates were effective and that the insurer is estopped to deny coverage under these certificates.
Appellees answered the appeal seeking modification of the judgment in several respects. Appellees contend that the trial judge erred in failing to award $10,100 as prayed for in the original petition. The answer further prays that the legal interest be recognized to be 5% per annum from March 5th, 1970, and 7% per annum from July 27th, as per Act 315 of 1970 of the Louisiana legislature.
Credit life certificates issued in the instant case were as follows: No. GC62803 in the amount of $6,000; No. GC62804 in the amount of $2,000; No. GS62805 in the amount of $2,000; and No. GC62806 in the amount of $100. Both the certificates in the master policy between the insurer and the bank state that in no case shall the amount of insurance issued by the bank exceed in the aggregate $10,000. These four certificates in the aggregate exceed $10,000. We hold that the clear and unambiguous statement in the master policy and on the face of the certificate clearly limits the agent's authority to issue insurance only up to the amount of $10,000. Thus, the insurer cannot be liable in the instant case for more than $10,000 of coverage.
Appellants argue that the penalties which can be assessed under LSA-R.S. 22:656, are not applicable in the instant case, and that in fact, the trial judge found that penalties would not be awarded in the instant case. The appellees take the position that the trial court did award penalties plus legal interest in the instant case.
The trial judge concluded his written reasons for judgment with the following paragraph:
"LET THERE BE FORMAL JUDGMENT HEREIN in favor of plaintiffs and against defendants, for $10,000.00, with legal interest from date of judicial demand until paid, plus 6% of the whole amount due as a penalty, and for all costs herein. There was no proof adduced as to reasonable attorney's fees."
The court's formal judgment on the other hand recites that:
"IT IS ORDERED, ADJUDGED AND DECREED that there be Judgment herein in favor of the plaintiffs, * * * and against the defendant, * * * in the full sum of Ten Thousand *536 ($10,000.00) plus six per cent (6%) per annum interest from March 5, 1970, until paid, and for all costs of these proceedings;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the demands for penalties and attorney's fees are denied."
It can readily be seen not only that there is a discrepancy between the formal judgment and the written reasons for judgment, but that the formal judgment itself is self-contradictory. The formal judgment does not mention the legal interest of 5%, but awards 6% interest (the percentage applicable under LSA-R.S. 22:656), from March 5, 1970, the date of judicial demand. The legal interest rate is payable from the date of judicial demand. The penalty rate under LSA-R.S. 22:656 is payable from the time when proof of death was presented to the insurer, not from the date of judicial demand. Despite the usage of the 5% interest rate, the judgment recites that the statutory penalties are denied.
The formal judgment signed by the trial judge expressly states that penalties are denied in the instant case. Thus, we can only conclude that the trial judge determined this was not a proper case for the application of penalties provided for in LSA-R.S. 22:656. We find no error or abuse of discretion in that determination.
The insurer in the instant case had reasonable grounds to believe that its defense to the claim presented by the plaintiff was valid and that it was not liable upon the contract, despite the fact that the conclusion has ultimately been determined to be erroneous. We cannot say that the insurer's refusal to pay was "without just cause" simply because its defense was not subsequently upheld by the court. Thus, we hold that the trial court committed no error in determining that the statutory penalties were not applicable in the instant case.
The interest due on the judgment in the instant case will be the legal interest provided for in Article 1938 of the Revised Civil Code. By Act 315 of 1970, the legislature amended Article 1938 to change the legal rate of interest from 5% per annum to 7% per annum. This act became effective July 27th, 1970. Article III, Sec. 27, Constitution of Louisiana. (The Thirty-Third Regular Session of the legislature (1970) convened May 11, 1970, and adjourned sine die July 7, 1970). Appellee argues that the interest due, in the instant case, should be 7% after the effective date of Act 315 of 1970. There is nothing in that amendment, however, which requires that it be given the retroactive effect urged by the appellee. The effective rate of interest as of the date of judicial demand was 5%, and we think that this is the rate of interest due in the instant case from the date of judicial demand until paid.
Thus, the judgment of the trial court is affirmed insofar that it holds that the defendant is liable to the plaintiff for the sum of $10,000, but the judgment is amended to provide that the interest due on the judgment will be 5% per annum from March 5, 1970, until paid. All costs to be paid by defendant-appellant.
Affirmed as amended.