298 So.2d 892 (1974)
Josephine Williams KEY et al., Plaintiffs-Appellees,
v.
CHEROKEE CREDIT LIFE INSURANCE CO. et al., Defendant-Appellant.
No. 4593.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Landry, Watkins, Cousin & Bonin by Alfred S. Landry, New Iberia, for defendant-appellant.
Hallman Woods, New Iberia, for plaintiffs-appellees.
Armentor & Wattigny, New Iberia, for defendant-appellee; Gerard B. Wattigny, of counsel, for City Bank and Trust Co.
*893 Before FRUGÉ, DOMENGEAUX, and WATSON, JJ.
FRUGÉ, Judge.
This is an action on a credit life insurance policy. Plaintiffs, the widow and heirs of William Key, the insured, and City Bank and Trust Company of New Iberia, intervenor, the creditor beneficiary, seek the proceeds of the policy issued on the life of William Key. The trial court sustained a plea of equitable estoppel in favor of plaintiffs and intervenor and rendered judgment in the full amount of the policy. The insurer has appealed. We affirm.
Defendant insurer initially filed exceptions of no cause or right of action and/or a motion for summary judgment which was sustained by the trial court. This court reversed and remanded the matter for trial on the merits; Josephine Williams Key, et al v. Cherokee Credit Life Ins. Co., 254 So.2d 696 (La.App. 3rd Cir., 1971).
The appellant specifies as error the trial court's application of the doctrine of equitable estoppel against the defendant. Appellant further alleges as error the failure of the trial court to give effect to the terms of the insurance certificate issued to decedent requiring that the insured be in insurable health at the time the certificate was issued.
William Key, the decedent, arranged with the City Bank and Trust Company of New Iberia, Louisiana, on December 13, 1968, the re-financing of the outstanding balance of an indebtedness he owed General Motors Acceptance Corporation (GMAC). Mr. Key at the same time paid out an old loan which originated in 1965 and was secured by a credit life policy.
Mr. Key discussed the matter of re-financing the GMAC loan with Mr. Paul Romero, Jr., the executive vice-president of the bank. Romero agreed that the indebtedness of Mr. Key to GMAC would be re-financed and that a policy of credit life insurance would be issued on the life of Mr. Key for the full amount of the debt. At this time, Mr. Key signed a blank note.
Mr. Romero testified the arrangement was that GMAC would be notified by the bank. When the payment came due in January of 1969, GMAC forwarded the title to the vehicles, the chattel mortgage, and the full amount of the indebtedness to the bank. The bank immediately paid off the obligation by issuing a check. The note was completed and the bank issued a certificate of insurance on the life of William Key on January 17, 1969. During the intervening period, Mr. Key was hospitalized on January 13, 1969, suffering from acute leukemia and infection. On January 18, 1969, Mr. Key died.
Defendant, Cherokee Credit Life Insurance Company, denies liability on the ground that the policy never became effective because the debtor was not in insurable health on the date the certificate was written. Appellant relies upon the clause printed on the reverse side of the certificate which provides as follows:
"Cherokee Credit Life Insurance Company hereby certifies that under and subject to the terms of a Master Group Credit Insurance Policy issued to the Creditor named on the reverse side, the Debtor, if he is in insurable health at the time this certificate is written, is insured for one or more of the coverages listed below provided, however:"
Plaintiffs assert that defendant insurance company is bound by the representation of coverage made by its agent (Romero) to decedent and urges that defendant is now estopped to deny coverage under the policy.
The above provision or similar ones have previously been given effect by courts of this state. Aucoin v. First National Life Ins. Co., 204 So.2d 703 (La.App. 3rd Cir., 1967); Fournier v. Gulfco Life Insurance Co., 241 So.2d 287 (La.App. 1st Cir., 1970). The trial court found that William Key *894 was not in insurable health on January 17, 1969, the date the certificate was issued. Therefore, if the above provision was literally applied, the insurance did not take effect. Since plaintiff urges equitable estoppel, we must examine the facts with regard to the issuance of the certificate to determine whether defendant may deny coverage under the policy.
Appellant asserts that estoppel is an equitable remedy which applies equally to both parties and is unavailable to one who does not come before the court with clean hands. Appellant contends that failure of decedent to reveal the condition of his health to the insurer prior to the issuance of the certificate should prevent the application of equitable estoppel in favor of plaintiffs.
It appears that Mr. Paul Romero, the vice president of the bank, assured Mr. Key that a policy of credit life insurance would be issued on his life. Mr. Key made no representations with regard to his health. No inquiries of any kind with regard to the health of Mr. Key were made by the agent nor was an application by Mr. Key required. Mr. Romero, acting as agent for the insurance company, represented insurance would be provided on December 13, 1968, when Mr. Key signed the blank note. The representation that coverage would be provided was never withdrawn. In fact, the certificate was issued on January 17, 1969, the day before Mr. Key died.
Key had dealt with the bank previously under the similar circumstances without difficulty. His reliance on the representation of the agent of the insurer under the circumstances was entirely reasonable. Mr. Key was an uneducated black man who was barely able to sign his name. His previous loans with the bank had been secured by credit life.
The fact that the transaction here dealt with the re-financing of a prior loan with another corporation which quite possibly had in effect a credit life insurance policy to cover the transaction is significant. (However, the record is silent on this point). Mr. Key specifically requested Mr. Romero to furnish credit life insurance on the transaction. The representation by the agent that such insurance would be provided clearly places plaintiff in a position of reliance upon the agent's assertions. If no coverage was available, a different course of action could have been followed which would have maintained the loan with the prior lender.
Undeniably, reports of the treating physicians of Mr. Key indicate that as early as July, 1968, decedent was aware of a very serious illness. After a period of hospitalization of about seven days, Mr. Key was discharged as significantly improved and feeling better. His condition at this time was diagnosed as possible leukemia. In view of the fact that Mr. Key left the hospital feeling fairly well and the anemic condition which had caused his hospitalization had disappeared, it is reasonable that Mr. Key believed he was cured. The failure of Mr. Key to disclose to the agent that he had been previously hospitalized is alleged to be bad faith. Mr. Key's lack of education, his station in life, and his subsequent recovery indicates that decedent was in good faith at the time of the transaction. Mr. Romero testified that Mr. Key appeared to be in insurable health. Additionally, no inquiry was made about his health, and Mr. Key made no representations. It is fair to state the record falls far short of establishing bad faith on the part of Mr. Key.
We, therefore, conclude that the application of the doctrine of equitable estoppel by the trial court was correct. The insurer is estopped to deny the representation on the part of its agent, who was empowered to issue insurance certificates, that coverage would be provided Mr. Key. In view of the application of the doctrine of equitable estoppel, the policy provision *895 does not prevent the insurance from taking effect.
For the reasons assigned, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be paid by defendant-appellant.
Affirmed.