# MUTUAL LIFE INSURANCE COMPANY *v.* MARGIE OTTO.

*Life Insurance Policy—Actual Delivery—As Condition Precedent.*

Where an insurance policy expressly or by implication provides that it shall not bind the insurer until it is actually delivered, such delivery is necessary to complete the contract.    p. 183

Whether the requirement of the actual delivery of a policy is a condition precedent to its binding the insurer depends on the intention of the parties as expressed in the words of the contract.                              p. 183

A requirement in the policy of actual delivery thereof does not require a delivery to the insured in person, a delivery to his

agent or any person authorized to receive it for him being sufficient.                                                              p. 183

A provision in a life insurance policy, that it should "become void if upon date of actual delivery, the insured is not alive," did not render it void because the insured did not actually receive the policy before his death, it having been given by the insurer to its solicitor, who had received insured's application, to be by him handed to the insured, and the first premium having been paid and received by the insurer.          pp. 181-185

*Decided June 8th, 1927.*

Appeal from the Baltimore City Court (OWENS, J.).

Action by Margie Otto against the Mutual Life Insurance Company of Baltimore. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Arthur L. Jackson,* for the appellant.

*Walter V. Harrison* and *Charles G. Page,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appellant in this case conducts a life insurance business in Baltimore City. On or about April 20th, 1925, Clarence W. Foxwell, its soliciting agent, received from Earl W. Otto, an infant, an application for a five hundred dollar twenty year endowment insurance policy on his life in favor of his mother Margie Otto, and at the same time received from him fifty-eight cents in payment of the first week's premium to become due on the policy when issued. The application was accepted, and, on April 25th, 1925, the policy was issued and delivered by the appellant to Foxwell, to be by him delivered to Otto. Otto was injured in an automobile accident on April 28th, 1925, before Foxwell had manually delivered the policy to him, and on the same day he died.

Thereupon Mrs. Otto demanded of the appellant the amount of the policy, and upon its refusal to pay the same she brought this suit. The case was tried before the court and a jury in the Baltimore City Court and, the verdict and judgment at that trial being for the plaintiff, the defendant appealed.

The appellant's defense below, and its contention in this Court, is that, since the policy had not been manually delivered to Otto in person before his death, it never became effective, and it bases that contention on this clause of the policy: "Second. This policy shall become void, if upon date of actual delivery, the insured is not alive and in sound health, or if the insured dies in consequence of his or her own criminal action; or if there is in force, upon the life of the insured, a policy previously issued by this company, unless this policy contains an endorsement signed by the president or secretary, authorizing this policy to be in force at the same time. If this policy becomes void, all premiums paid thereon shall be forfeited to the company." That defense was presented by three prayers offered by the appellant at the close of the plaintiff's case, all of which were refused, and the action of the court in refusing those three prayers is the subject of the only exception submitted by the record. If the appellant's contention is good, the three prayers should have been granted; if not, they were properly refused. So that the only questions before us are whether at the time of Otto's death there had been an "actual delivery" of the policy to him, within the meaning of the clause above referred to, or if not, whether such delivery was waived by the appellant.

The facts relevant to that inquiry are not in dispute, and are as follows: Foxwell, as has been stated, received the policy for delivery to Otto on April 25th, which was on Saturday, on which day appellant's agents received all policies based on the "industrial plan" issued during the week. When he received the policy sued on it was "paid up" until the next succeeding Saturday, "which would be the second of May." He appears to have had certain regular "debit" routes in northeast Baltimore, on which he worked collecting premiums and delivering policies on Monday, Tuesday and Wed-

nesday in each week, and on Thursday, Friday and Saturday in each week he delivered policies issued to persons in parts of the city not on such routes. Otto lived on Brice Street in northwest Baltimore, which was not on Foxwell's regular route, and he had not reached him to deliver the policy to him before he, Otto, was killed, and when asked why he had not delivered the policy after his regular hours, he said: "I don't know any set rule on that; there is no set rule for delivering policies and no set rule for writing policies. We have no stated hours, and I don't remember whether I had my machine with me on the Monday night you were speaking of on the 27th, but I did have the machine on Monday 20th, and I drove over there in my machine. I don't have my machine every day." At the time the first premium was paid Foxwell gave Otto a receipt which contained the following statement: "No obligation is incurred by said company by reason of this payment, unless said application is accepted and a policy delivered," and also a notice to the effect that if the policy were not delivered within four weeks from the date of the receipt, the assured should notify the company of its non-delivery.

The case really turns on the meaning to be given the words "actual delivery" used in the policy. Appellant contends that they mean a physical delivery to Otto in person, while the appellee says that they mean delivery either to Otto or to any other person authorized to receive it for him. In construing the words "actual delivery" as used in the policy, no assistance is to be had by reference to the notice in the receipt that "no obligation is incurred by the company by reason of" the payment of the first premium "unless * * * a policy is delivered," first, because the word "delivery" is broader than the phrase "actual delivery"; second, because the notice was no part of any contract and, whatever it amounted to, it was merged in the completed contract, to wit, the policy; third, because the agent had no power to limit the right of his principal to vary any or all of the terms found in the notice; and finally, because the action is not upon any supposed contract evidenced by the notice but upon the policy.

So that the question is, Was there "a delivery" within the meaning of the policy?

Where an insurance policy, expressly or by implication, provides that it shall not bind the insurer until it is actually delivered, manifestly such delivery is necessary to complete the contract. 138 *Am. St. Rep.* 47. But while such a requirement may be prescribed as a condition precedent, whether it is so in a particular case must depend upon the intention of the parties as expressed in the words of the contract. In this case, the only reference to the "delivery" of the policy is found in the first paragraph of the "conditions" of the policy, where it is said: "This policy shall become void, if upon date of actual delivery, the insured is not alive." The words "shall become void," are inconsistent with the hypothesis that the delivery of the contract was a condition precedent to its complete operation. Because a thing does not "become" void unless it exists, for if nothing exists nothing can be destroyed. If the insurer had intended that the policy should not become effective or consummate until actually delivered, it would have said that, instead of saying that it should "become void" if when delivered the insured was not alive. On the contrary, by the use of the words last quoted, it conceded that the policy was a completed and binding contract from the date of its issue, but one which would "become" void if prior to actual delivery the insured ceased to exist. The question then is, What, under such circumstances, do the words "actually delivered" as used in the policy mean? Delivery can only mean delivery to the insured, or to some person acting for him and expressly or by fair implication authorized to receive it for him. The policy does not expressly require that the "actual delivery" shall be to the insured in person, so that delivery to his agent or any person authorized to receive it for him would completely gratify the letter as well as the spirit of the contract.

It appears, as has been said, that on April 25th, 1925, the company had received and accepted the insured's application and accepted from him a premium fully paying for insurance under a policy to be issued on such application for one week

from the date thereof, and had actually executed and issued such a policy, and delivered it to the soliciting agent, to be by him manually delivered to the insured. The insurer had therefore done everything it could to complete the contract, and had actually issued, and had delivered to its soliciting agent for unconditional delivery to the assured on April 25th, 1925, the very policy No. 771,226 for which the insured had applied. That it was not manually delivered to the insured on that day was purely fortuitous, and due to reasons which had nothing to do with the completion of the contract of insurance, but concerned only the personal convenience of the agent. After the policy had actually been issued, and the company had accepted payment for insurance for one week from the date of its issue, it certainly could not have intended that the protection which the policy afforded the insured should depend upon the casual impulses or convenience of the agent whom it had instructed to deliver it to the insured. In fact, the words "shall become void, if upon date of actual delivery, the insured is not alive," inevitably indicate that such was not the intention of the insurer. For if the insured were not alive, the policy could not very well have been delivered to him, and if delivery to him in person had been intended there would have been no sense in using the word "alive."

So that the question is narrowed to this, Was Foxwell so far authorized to receive the policy for Otto that a delivery to him was a delivery to Otto? There was evidence from which the jury could have inferred that the policy was executed, issued, and delivered to Foxwell for unconditional delivery to Otto. Under such circumstances, while there is some authority to the contrary, the great weight of authority supports the view that delivery to Foxwell was delivery to Otto. 32 *C. J.* 1126; 138 *Am. St. Rep.* 53; 14 *R. C. L.* 898. In fact the rule supported by the weight of authority goes even farther than that, for it is that delivery under such circumstances to one in the relation of Foxwell to the insurer was delivery to the insured, even though the policy stipulated that delivery should be made to the insured before the policy

became effective, and was therefore a condition precedent, while here such delivery is not a condition precedent. That conclusion has been supported on a variety of grounds, that the insurer's agent is a trustee for the insured (*New York Life Ins. Co. v. Babcock,* 104 Ga. 67, 42 L. R. A. 91; *New York Life Ins. Co. v. Greenlee,* 42 Ind. App. 82), that he is a "custodian" for the insured (*Missouri State Life Ins. Co. v. Woodson,* Tex. Civ. App., 256 S. W. 994), that he is the agent of the insured (*Hallock v. Commercial Ins. Co.,* 26 N. J. L. 279), and that delivery to him is "equivalent to delivery to the applicant" (*New York Life Ins. Co. v. Rutherford,* 284 Fed. 709; *Kentucky Central Life etc. Co. v. Pemberton,* 212 Ky. 510). But running through all of these cases is the principle that, where the minds of the insurer and insured have met upon a definite contract, which has been accepted by both, and evidenced by the execution and issuance of a policy by the insurer, where the application has been accepted and the premium paid, and where it is the intention of both that the proposed contract of insurance shall be in force from its issue, and nothing further remains to be done but its manual traduction to the insured, and it is delivered to the soliciting agent to effect that traduction, and he has no discretion or authority to do anything other than deliver it, that delivery to him is delivery to the insured, because in such a case the agent is but a minister or vehicle to transmit the written evidence of the contract, just as the mails or any other public messenger would be. Whether he be called a trustee, a custodian, or an agent, and in a sense he is all three, is immaterial, as the material thing is that he is a messenger selected by the insurer to convey the executed, consummated, and completed contract to the insured, and delivery to him is a delivery to the insured just as delivery to any other messenger selected for that purpose would be.

For, as to that duty, from the time he received the policy he became the agent of the person to whom he was to deliver it, and as to it he was no longer the agent of the insurer, since for the time he had done everything he was authorized to do in connection with it which required the exercise of

any discretion. He had solicited it, taken an application for it, submitted that to the insurer, collected the premium and paid it to the insurer, which had ratified his acts and issued the policy. He had nothing else to do for the insurer in connection with the policy, and in delivering it he was acting for the insured in carrying to him that which he had bought and paid for.

It follows from what has been said that the defendant's prayers were properly refused, and the judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs.*

Bond, C. J., filed the following dissenting opinion.

There are undoubtedly authorities in support of the conclusion which the court has reached in this case, but I question whether the weight of authority is in agreement with it. The author of the special study on "Delivery of a Life Insurance Policy," in 33 *Harvard Law Review,* 198, 221, concluded that, "These stipulations requiring a delivery of the policy to the applicant have been literally construed in most instances, and it has accordingly been held by most of the courts which have passed upon the question that if the applicant dies before the delivery of the policy to him, no recovery on the policy can be had. * * * Adopting the traditional attitude toward 'freedom of contract,' a majority of the courts have strictly enforced such stipulations."

My view is that the intention, in the drafting of the present stipulations for "delivery" or "actual delivery" as a prerequisite to the effectiveness or validity of the insurance, can have been only that there must be a transfer of possession or control of the policy to the insured. That is the common, ordinary, meaning of delivery of an instrument (*Harris v. Regester,* 70 Md. 109, 120), and there seems to be no ground for supposing that the words were used in the stipulations with any meaning out of the ordinary. And in this view of the intention of the stipulations, there can be little, if any,

question, I take it, that it would have to be held that the present policy did not become effective. There was no such transfer of possession or custody of it to the insured. We may say it was nearly so delivered and that only fortuitous circumstances prevented such delivery, but it was not so delivered, and could not, as I see it, be called delivered except by putting an unauthentic meaning into the word. And if this is correct, the beginning point fixed in the policy was not reached. And, of course, the court would not be authorized to substitute something which it thinks ought to suffice, for that which the instrument being enforced fixes for itself. The difference between custody by the insurance agent, and delivery by him as he intended, may be small in one aspect, but in another it is large, if my construction of the intention is correct, for, being the difference between what was intended and what was not, it may lead to just the difference between following the rule of the intention of the instrument and following no rule at all. There is no rule of law for the case except that which was intended by the words used.

The agent who had custody of the policy here seems to me to have been, clearly enough in fact, only the agent of the insurer, and finding a delivery to the insured by characterizing him as an agent or trustee of the insured, as suggested in some of the cases cited, would, I think, be a resort to fictions which would rather transparently cloak a departure from the principle of carrying out the intention of the instrument.

In the special study cited above, the author suggests that a frank departure from the rule of the intention in drafting the instrument might be desirable. He refers to the fact that many stipulations are embodied in contract forms and signed or accepted without actual negotiation or bargaining, and suggests that, by treating these in all cases as agreements when actually they are not such, bad results are accomplished, results which courts have sought to avoid by various escapes from the rule of construction of the contract while acknowledging allegiance to it. Similar suggestions have been made by others. I am inclined to agree that bad results are some-

times accomplished by the enforcement of unexpected stipulations in previously prepared forms. A saving compromise with the rule binding parties to whatever they sign or accept is difficult to work out, however, and, so far as I am aware, has not been worked out satisfactorily, and is not law. The dangers in that direction are obvious. And I do not see that there could be any compromise with a precise fixing of the beginning of the contract relation, so as to make the insurance begin earlier than the insurer has agreed that it shall begin. There is now no rule for guidance in such a case as this other than that of proper construction of the stipulation, and a departure from that rule, under any guise, would be proceeding outside of the law.