FOURNET, Justice.
 

 The Great Southern Life Insurance Company is appealing from a judgment in favor of the plaintiff, Mrs. Alpha R. Pruitt, the named beneficiary in a policy issued by it on the life of plaintiff’s husband, wherein she was awarded $4,000, the $2,000 face value of the policy and the additional $2,-000 claimed under the double indemnity clause because of che accidental. death of the insured.
 

 The sole issue presented for our decision in this case is whether or not the policy was actually delivered to and accepted by the insured within the intendment of the contract of insurance.
 

 An application for a policy of insurance with the Great Southern Life Insurance Company was made and signed by Omar D. Pruitt on December 14,- 1939. At the time he made this application, Pruitt paid a premium of $13 to the soliciting agent. The application, made a part of the contract under the terms of the application and of the policy, contained the stipulation “That the insurance hereby applied for shall not take effect until a written or printed policy shall have been actually delivered to and accepted by me, while I am in good health * * The application was mailed to the home office of the company in Houston, Texas, and was received there on December 16, 1939. In the due course of business the policy was issued and mailed to the soliciting agent for delivery. It was received by him on December 30. He did not go to the home of the insured to make delivery of the policy until January 4, 1940. Then finding that Pruitt had died on January 1, 1940, as the result of a gunshot injury accidentally sustained while out hunting on that day, the agent retained the policy and returned it to the defendant company for the reason that the letter in which it had been transmitted to him for delivery contained the instruction that he was not to make delivery of the “policy
 
 *532
 
 unless applicant is in good health,” and, further, that he “Make a personal investigation and return policy to company at once if applicant is found to be ill or has been since date, of application.” On January 15, the amount of the premium paid by the deceased at the time he made application for the insurance was returned' to the widow.
 

 It is the contention of the defendant that there was no actual delivery to and acceptance of the policy by the insured within the intendment of the contract between them.
 

 The plaintiff, on the other hand, contends the delivery of the policy was completed when the same reached the agent of the defendant company while the insured was in good health, and that if she is in error in this contention, then, since it was the duty of the agent to deliver the policy promptly upon its receipt, the delivery must be considered as having been accomplished, for the agent failed to make a .prompt delivery.
 

 “A delivery of an insurance policy may be actual or constructive. Actual delivery is not essential,
 
 unless expressly ■made so by the terms of the agreement.
 
 Whether an insurance policy has or has not been delivered after its issuance so as to complete the contract and give it binding effect does not depend upon its manual delivery to, or possession .by, insured, but rather upon the intention of the parties as manifested by their acts or words. The test of a sufficient delivery is whether the company or its agent intentionally parts with control or dominion of the policy and places it in the control or dominion of insured or some person acting for him with the purpose of thereby making a valid and binding contract of insurance. The controlling question is not who has the actual possession of the policy, but who has the right of possession. * * * ” 32 C.J. 1125, § 228. (Italics ours.) “A delivery is not effected, however, by a transmission of the policy to the agent of the insurer under instructions to turn over the policy to the insured only after the compliance with certain conditions, such as that the applicant shall be in good health at the time, or that the premium shall be paid.” 29 Am.Jur. 166, Section 152. For other authorities on this subject, see, 14 R.C.L. 898, Section 76; 53 A.L.R. 495, etc.; Vol. 1 of Couch’s Cyclopedia of Insurance Law 225, etc., particularly Sections 118 and 125.
 

 It is the) statutory law of this state that every policy of insurance issued by a life insurance company doing business in Louisiana “shall contain the entire contract between the parties.” Act No. 52 of 1906, as amended by Act No. 227 of 1916. See, also, Shuff v. Life & Casualty Ins. Co., 164 La. 741, 114 So. 637.
 

 The application in the instant case was made a part of the contract by the express terms of the policy and the application itself. Consequently, it is just as binding on the insured as the provisions requiring the insurer to pay the face value of the policy in the event of the death of the insured, provided the insured has complied with the obligations assumed by him in the contract. There is nothing ambiguous about the stipulation contained in the
 
 *534
 
 application in this case. In signing it the insured set forth in very clear language the terms and conditions under which the policy would become effective when he stipulated “That the insurance hereby applied for
 
 shall not take effect iintil a written or printed policy shall have been actually delivered to and accepted by me,
 
 while I am in good health * * and since there is nothing in this stipulation contrary to the law or against public policy, it must be enforced. (Italics ours.)
 

 There can be no doubt that the insurance company understood the policy applied for was not to become effective unless and until it was actually delivered to the insured while he was in good health, as well as that it must be accepted by him, for when it transmitted the policy to its soliciting agent for delivery, it specifically instructed him to ascertain the condition of the health of the insured and not to deliver the policy to Em if he was or had been in ill health since the date of his application. If such was found to be the case, the agent was instructed to return the policy to the company.
 

 It seems obvious to us that it was the intention of the parties to reserve unto themselves the right to repudiate the contract up until the moment of its consummation. The insured could repudiate the contract even after the policy was physically placed in his hands by merely refusing to accept it. The insurer could repudiate the contract at any time up until it was delivered to the insured, and even then if he was found to be in ill health or if he had been in ill health at any time since he made his application for the insurance. As a matter of fact, when the soliciting agent went to the home of the insured, it was impossible for him to make delivery of the policy, for the insured was then dead.
 

 The authorities cited by counsel for plaintiff to sustain his argument that the court must consider the policy was actually delivered to the ■ plaintiff because of its receipt by the soliciting agent at a time when the insured was in good health, are not analogous to the case at bar.
 

 For example, it is true that in- the case of the Mutual Life Insurance Company v. Otto, 153 Md. 179, 138 A. 16, 17, 53 A.L.R. 487, the court found delivery of the policy to the insurance company’s soliciting agent amounted to a delivery to the insured, but the circumstances in that case make it easily distinguishable from the one now under consideration. The policy in the Otto case contained the following clause: “This policy shall become void, if - upon date of actual delivery the insured is not alive and in sound health * * The court interpreted the use of the words “shall become void” in this clause to mean that the insurance company intended the policy to become a completed and binding-contract
 
 from the date of its issue,
 
 reasoning that “a thing does not ‘become’ void unless it exists, for if nothing exists nothing can be destroyed.” Having arrived at this conclusion, the court said: “The question then is, What, under such circumstances, do the words ‘actually delivered,’ as used in the policy, mean? Delivery can only mean delivery to the insured, or to some person acting for him and expressly or by fair implication au
 
 *536
 
 thorized to receive it for him. The policy does not expressly require that the ‘actual delivery’ shall
 
 be
 
 to the insured
 
 in
 
 person, so that delivery to his agent or any person authorized to receive it for him would completely gratify the letter as well as the spirit of the contract.” The policy in question had been issued by the company and sent to its soliciting agent Foxwell for delivery. Before the agent could make delivery, however, the insured, Otto, was injured in an automobile accident and died as the result thereof. The court continued by saying: “So that the question is narrowed to this, Was Foxwell so far authorized to receive the policy for Otto that a delivery to him was a delivery to Otto? There was evidence from which the jury could have inferred that the policy was executed, issued, and delivered to Foxwell for
 
 unconditional
 
 delivery to Otto.
 
 Under such circumstances,
 
 while there is some authority to the contrary, the great weight of authority supports .the view that delivery to Foxwell was delivery to Otto.” (Italics ours.) In analyzing the authorities cited by the court to sustain this conclusion, the comment is as follows: "* * * running through all of these cases is the principle, that,
 
 where the minds of the insurer and insured have met upon a definite contract, which has been accepted by both,
 
 and evidenced by the execution and issuance of a policy by the insurer, where the application has been accepted and the premium paid,
 
 and where it is the intention of both, that the proposed contract of insurance shall be in force from its issue,
 
 and
 
 ■nothing further remains to be done but its manual traduction to the insured,
 
 and
 
 it is delivered to the soliciting agent to effect that traduction, and he has no discretion or authority to do anything other than deliver it; that delivery to him is delivery to the insured,
 
 because in such a case the agent is but a minister 6r vehicle to transmit the written evidence of the contract, just as the mails or any other public messenger would be.” (Italics ours.)
 

 This principle of law cannot be applied in the instant case for two very good reasons.
 
 First,
 
 Pruitt and the insurance company did not intend for the contract between them to become a completed and binding one from the date of
 
 its issue,
 
 for they expressly provided this would be the case only when the policy was delivered to and accepted by the insured while he was in good health.
 
 Second,
 
 the policy was not transmitted to the defendant’s soliciting agent for
 
 unconditional
 
 delivery to the insured. Delivery to the insured was specifically restricted and limited by the conditions laid down in the instructions given the agent when the policy was transmitted to him for delivery ‘to the insured.
 

 In the case of Jefferson Standard Life Insurance Company v. Lyons, 122 Fla. 346, 165 So. 351, 353, also relied on by the plaintiff, we find that while the court did hold the mailing of a life insurance policy to the company’s agent constituted delivery thereof to the insured within the intendment of the provisions found in the application for such insurance, it admitted that “In this disposition we are conscious that we are confronted with a close question, and we are not unaware that a contrary view
 
 *538
 
 could be reached and strongly supported. We think, however, that this is a typical case for application of what might be termed the balance of equity rule.” The application signed by the insured in the Lyons case contained the stipulation that the company would incur no liability-under the application “unless and until (a) it has been received and approved, (b) the policy issued and actually delivered, and (c) the premium has been actually paid to and accepted by the Company, or its authorized agent,” all during the lifetime of the insured and while he was in good health. The application was received and approved and the policy was issued and mailed to the soliciting agent, for delivery. There is nothing in the case to show that this application was made a part of the contract between the parties or to show that when the policy was mailed to the soliciting agent for delivery his delivery thereof was restricted or conditioned in any way by instructions from the company. Consequently, all that remained for the agent to do when he received the policy, in addition to delivering it, was to receive and accept the premium on behalf of the company as its authorized ’agent. It so happened that when Lyons signed the application for the insurance, the soliciting agent agreed to pay the first year’s premium provided Lyons would return it within the year. When the agent received the policy from the company, therefore, nothing remained for him to do' except to deliver it. In other words, the policy was transmitted to the agent for
 
 unconditional
 
 delivery if the agent’s agreement with- the insured with reference to the payment of the premium was binding on the company. The court, finding there was 'evidence to support the finding of the chancellor that the company had pursued a policy of permitting its agents to take notes or promises for premiums, and applying the balance of equity rule to the facts of the case, refused to disturb the chancellor’s ruling in favor of the insurer and held that “When the policy was sent to the soliciting agent of the company, he became the agent of both the insurer and the insured for the purpose of delivery, and, having held it for ten or eleven days before moving to do so, we hold that delivery was in effect performed.” However, since the policy in this case was sent to the agent for
 
 unconditional
 
 delivery, the holding is not analogous to the case we are considering.
 

 Counsel for plaintiff concede that the identical issue raised here has never been passed on by this court, but they do quote excerpts from the case of Coci v. New York Life Insurance Company, 155 La. 1060, 99 So. 871, in an effort to persuade us that since “ ‘delivery’ was held to have been accomplished in the Coci case when the policy was mailed at the home office of the company, ' an ‘actual delivery’ should be held to have been accomplished in this case upon receipt by the soliciting agent of the policy,” the insured having then been in good health.
 

 We cannot agree with counsel. The Coci case was analyzed and differentiated from a case similar to the instant case by the Court of Appeal for" the Parish of
 
 *540
 
 Orleans in Callan v. Mutual Life Insurance Company, 147 So. 110. In that case the court said:
 

 “Plaintiff’s case is very largely, if not entirely, pitched upon the authority of Coci v. New York Life Insurance Co., 155 La. 1060, 99 So. 871, 872. * * *
 

 “Under the circumstances we hasten to an examination of the Coci'case and find it to be an action on a life insurance policy in the sum "of $3,000, issued by the New York Life Insurance Company on the life of Sebastian Coci. The policy had been issued following a medical examination of the insured. The application contained the following stipulation:
 

 “ ‘That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health.’
 

 “And in the policy itself we find:
 

 “ ‘This policy takes effect as of the 14th day of November nineteen .hundred and eighteen (the policy had been issued on December 10th, 1918), which day is the anniversary of the policy.’
 

 “The policy was mailed in New York December 11, 1918, .addressed to its local agent in New Orleans and delivered by the local agent to an agent of the insured on December 16, 1918, on which latter date the insured was dangerously ill with pneumonia from which he died two days later. The question before the court was: When, in view of the stipulation in the application for, and in .the policy of insurance, did the policy go into effect? The court held:
 

 “ ‘It was the completion and mailing of the contract that constituted the. delivery of the policy within the intendment and meaning of the law. At that time and for nearly a month prior thereto the insured was in good health.
 

 “ ‘ * * *
 
 The policy in express terns was to take
 
 effect,
 
 not from the date of its
 
 issue,
 
 but from November 14.
 
 That date was made the anniversary of the policy, and it was from that date that the first premium was to maintain the policy in effect for the succeeding 6 months. The insured was entitled to the delivery of the policy on the day the contract was completed and signed. The contract was from that date binding on the assured, and if binding on him it was likewise binding on the company.’
 

 “In discussing the meaning of the phrase ‘delivered to and received by me during my lifetime and good health,’ the court declared that there was nothing in that phrase which
 
 rmeant or was intended to mean an actual physical and personal delivery.
 
 And there is nothing in the stipulation to warrant the conclusion that the insured was willing to leave the question of his good health, the delivery of the policy, and the binding effect of his contract to the decision and determination of a third party. The most reasonable interpretation of which the agreement is susceptible is that the insured warranted his good health at the time the contract was to become consummated and binding on both parties, and that must be regarded as
 
 *542
 
 having taken place when the policy was issued and mailed
 
 without condition,
 
 limitas
 
 tion, or restriction.’ ”
 
 (Italics ours.)
 

 Thus it will be seen that the delivery by the agent in the Coci case was found by the court to be an
 
 unconditional
 
 delivery. There the insured had only to “receive” the policy. To the contrary, in the instant case, the insured, even when the policy was delivered, still had the power to exercise his right of rejection. Something yet remained that depended on his own volition — the insured had to “accept” the policy. Further, in the Coci case, the court was confronted with the problem of arriving at the intention of the parties in view of the conflicting and ambiguous provisions found in the application and the policy itself, both of which formed one contract. In the application was the provision that the insurance would not take effect “unless * * * the policy is delivered to and received by me during my lifetime and good health,” while in the policy itself was the provision that it would take effect “as of the 14th day of November nineteen hundred and eighteen, which day is the anniversary of the policy.” [155 La. 1060, 99 So. 872.] And even in arriving at the conclusion that it was the intention of the parties that the contract would take effect with the completion and mailing of the contract, provided the insured was then in good health, the court said: “In reaching this conclusion we are aware that jurisprudence generally is not in harmony with this holding. There are many jurisdictions that hold a contrary view. * * *”
 

 In the Callan case, supra, the Court of Appeal for the Parish • of Orleans was called upon to interpret the following clause in the policy: “This policy is void until the same is actually delivered to the insured
 
 in person
 
 while in sound health.” (Italics ours.)
 

 The policy had been issued without a physical examination having been undertaken by the insured, as was also the case here. After differentiating the Coci case, as above quoted, the court said:
 

 “There is, therefore, a distinction to be made between policies issued with and without medical examinations. This difference would be a good reason for the requirement of actual, personal delivery of the policy to the insured in good health. An opportunity would thus be afforded the company’s agent to determine the apparent state of health of the insured. * * *
 

 “The clause concerning delivery in the Coci case differs from the case at bar in that actual, personal delivery was not required ; consequently, as pointed out by the court itself, the intention of the parties to the insurance contract considered in the Coci case was that the contract should be completed when consummated and not, as in this case, suspended until delivered to the insured in good health. We find no objection to a provision of this character upon the ground of public policy and, therefore, see no reason why contracts of insurance with such stipulations should not be enforced. See Cooley, Briefs on Insurance (2d Ed.) vol. 1, p. 669, where we-find the following:
 

 “ ‘If the delivery is necessary to complete the contract or if the policy ■ contains the condition that it was not to be effective
 
 *544
 
 unless delivered to the insured during his life time in good health, there can be no delivery after the death of the insured.’ ”
 

 An application was made here for a writ of certiorari to review the judgment of the Court of Appeal and this court refused it, commenting: “.Writ refused. Judgment correct.”
 

 In the case of American Home Life Insurance Company v. Melton, 144 S.W. 362, the Court of Civil Appeals of Texas had for interpretation a clause in a contract of insurance that is, for all intents and purposes, identical to the clause that is decisive of the issues in the instant case. The clause there under consideration was contained in the application for the insurance and reads as follows: “I hereby warrant and agree as follows: (1) That, if this application is accepted, the policy issued hereunder shall not take effect until * * * such policy [is] delivered to and accepted by me, and all during my continuance and while I am in good health.” (Brackets ours.)
 

 This application, under the terms of the policy, was attached to and made a part thereof. When the application was received by the insurance company, the policy was executed, but it was kept in the office of the secretary of the company for several months and, in fact, was never actually delivered to Melton for the reason that he died before such delivery could be made. The administratrix of Melton’s estate contended the evidence of Stewart, the president of the insurance company, was sufficient to show it was the president’s intention that the policy become effective from the date of its execution. In answering this contention, the court said:
 

 “It is elementary that delivery, either actual or constructive, of an instrument of writing of the character of this policy is essential to give it legal effect, and the stipulation quoted from the application for the policy in express terms was that the policy should not take effect until it should be actually delivered to and accepted by the applicant.
 

 “This was a clear and explicit agreement the effect of which could not be varied by Stewart’s [the president of the company’s] intention that the policy should be effective as soon as he executed it. If he had actually tendered the policy, yet, under the terms of the agreement, it would not become a completed contract until accepted by Melton, and there was no evidence to show that he even intended to accept it until after he was fatally ill, and which illness precluded his right then to demand its delivery, according to the terms of his agreement with the company.” (Brackets ours.)
 
 *546
 
 2d 629, we cannot permit our sympathy for the widow and her children to affect our decision in a case of this kind.
 

 
 *544
 
 The Supreme Court of Texas refused to review this judgment.
 

 The conclusion we have reached makes it impossible for us to apply the equitable principles invoked by the plaintiff, for under the express provisions of the Revised Civil Code, it is only where there is no express law that the judge is bound to proceed and decide according to equity. Article 21. As was pointed out in the case of Morford v. California Western States Life Insurance Company, 166 Or. 575, 113 P.
 

 
 *546
 
 For the reasons assigned, it is ordered, adjudged, and decreed, that the judgment appealed from be annulled and set aside and that plaintiff’s suit be dismissed, at hef cost.
 

 ROGERS, J., absent.