This suit involves the alleged right of the plaintiff to recover on a policy of insurance issued by defendant, on a Hereford bull owned by plaintiff. The issue turns upon whether the policy contract became effective while the bull was physically in an insurable condition.
The facts of the case, except in one minor respect, are not in dispute. Plaintiff purchased the bull and it was delivered to him on September 11, 1947. Two days later, through defendant's agent, B. S. Landis and Company, in the Town of Winnsboro, Louisiana, he signed written application to defendant for insurance on the animal in the amount of $800.00. At the agent's suggestion, plaintiff had a veterinarian examine the bull to ascertain the condition of its health. This was found to be satisfactory and written statement to that effect, signed by the veterinarian, accompanied the application which was promptly mailed to defendant's office in Chicago, Illinois. The application received favorable action and policy based thereupon issued at once. It was mailed to said agent with instruction to countersign and, presumably, to deliver to the plaintiff upon payment of the premium. It was countersigned by the agency on September 18th and mailed to plaintiff about the hour of 4:00 P.M., September 20th. He received it about 10:30 the following morning.
Plaintiff discovered at about the hour of 1:00 o'clock, P.M., September 20th, that the bull was very sick although he had noticed for two or more days prior that it was off diet; — was not eating as much as it should have. He immediately called a veterinary surgeon who examined the animal and prescribed medicine for him. The malady was diagnosed as being anaplasmosis. The bull died not later than the hour of 5:00 o'clock the following morning which was approximately twelve hours after the policy was posted.
Plaintiff's position is that when the policy was countersigned by defendant's agent on September 18th, two days prior to definite manifestation of illness of the bull, delivery of the policy for all legal intents and purposes, was effected, notwithstanding it did not reach his physical possession while the bull was well, and notwithstanding the first year's premium had not been paid by him.
Defendant resists the suit on these grounds, viz.:
That the policy was not delivered while the bull was in sound physical condition as required by the application for the insurance and the policy executed pursuant thereto; that the first year's premium had not been paid, a condition precedent to the effectiveness of the policy contract; and, alternatively, that plaintiff, as required by the policy, on discovery of the bull's illness, did not by telegram give immediate notice thereof to defendant at its office in Chicago, as was stipulated in said application and policy.
The court rejected the urged defenses, and gave judgment for the plaintiff from which the defendant appealed.
The application for insurance, which is made a part of the policy contract, contains these agreements, viz.:
"We understand and agree that the policy to be issued hereon shall be founded entirely upon the representations and statements contained in this application.
"It is agreed that the agent of the company who takes this application is a special agent with limited authority, and is not authorized to make written or oral contracts, or to accept any risk, or to bind the company by any oral or written statement, or to waive, alter, change or modify anything contained in this application or the policy which may be issued thereon.
"It is agreed that this insurance shall not be in force or effect until and unless this application shall be accepted and favorably passed upon by the above-named insurance company, policy of insurance issued by said company and the premium paid thereon, and policy delivered to me/us *Page 110 
while the animal or animals covered by said policy is/are in good health, and entirely free from sickness or injury."
On the first page of the application conspicuously positioned, appears the following statement:
"This is not a binder, but merely an application for insurance, which is effective only upon delivery of policy while animal or animals are in absolute health."
Section 3 of the policy, inter alia, says:
"Under no circumstances shall this Company be liable under this policy for any loss * * *; nor for the death of any animalnot in absolute health when this policy is delivered."
It appears certain from the contents of the application for the insurance that four conditions must have been fulfilled before it would become effective, to-wit: the application must have been approved by the home office; the policy must have been countersigned by the local agent; the premium must have been paid, and the policy must have been delivered to the assured at a time when the bull was in good health.
The first two of these conditions were met. It is admitted that the premium was not paid or tendered prior to the animal becoming sick. Arrangement with the local agent for such payment was not made at the time of the application nor thereafter. The premium was tendered the day following the animal's death, but, of course, declined.
As to whether the policy was delivered to the assured, in contemplation of law, while the animal was in good physical condition, serious controversy exists. We have reached the conclusion that the admitted facts of the case do not sustain plaintiff's contention on this question.
It may be conceded that when the policy was mailed to the insured this amounted to a delivery of it to him, but when this was done the animal was in a dying condition. Therefore, such a delivery was abortive as a factor contributing to the effectiveness of the insurance.
The policy was not entrusted to the local agency merely as a vehicle for its transmission to the insured. If nothing had remained to be done or looked to precedent to delivery of the policy, then it could be said that automatic with it being signed by the local agent, the policy evolved into a mutually binding obligation. But this was not the case. The policy was to be delivered only after the payment of the premium and at a time when the insurable condition of the animal existed. Collection of the premium was the duty of the agent and to no extent did it become the agent of the insured simply because chosen as the instrument for the final consummation of the contract and delivery thereof under its terms and conditions, and those of the application therefor. Under express stipulations in the application and the policy the agent was inhibited from waiving or altering any of the conditions or agreements of either. It did not have the right to surrender the policy to the insured without collecting the premium. Its act in doing so certainly was not binding on the defendant and did not have the effect of waiving such payment as a condition precedent to the policy's mutually binding character.
The countersigning of the policy by the local agent, in Louisiana being one of the conditions precedent to its effectiveness, the policy thereby became a Louisiana contract. Under the laws of this state payment in some manner, of premium due on a policy of insurance, is indispensable to the binding character of the contract. See Coci v. New York Life Insurance Company, 155 La. 1060, 1068, 99 So. 871.
We know that as a matter of general practice, insurance policies of all kinds are delivered by local agents without prior or contemporaneous payment of the first premium due thereunder, but in so doing the agent acts on his own responsibility and as between him and the assured, the relation of debtor and creditor arises. The agent, of course, remits to the insurer the amount of the premium less his own commission. But, regardless of all of this the action of the agent does not, as to the insurer, waive the invariable rule that requires payment of the premium prior to delivery of the policy. In the present case, plaintiff *Page 111 
was ready and able to pay the premium. Evidently his ability in this respect was well known to the agent who was willing to credit him therefor, but the fact remains that the premium had not been paid prior to the animal's death; and though harsh as it may appear, defendant has the right to urge this fact in defense of suit on the policy.
It is admitted that the jurisprudence of this state contains no case that can be considered as a precedent to the case before us. In other jurisdictions where carrying of insurance on valuable live stock has been in vogue for decades, many cases have arisen that involve the validity of contracts of insurance similar to that issued in this case. Appellant cites and quotes from many of these cases. To sustain his position herein, however, appellee cites and relies upon the following cases decided by the Supreme Court of this state, which have to do with insurance on the lives of people, to-wit: Chapman v. Mutual Life Insurance Company of New York, 146 La. 658, 83 So. 887; Coci v. New York Life Insurance Company, supra; Pruitt v. Great Southern Life Insurance Company, 202 La. 527,12 So.2d 261, 145 A.L.R. 1427.
In the Chapman case it was held that when the policy was mailed by the home office to the local agent that act amounted to delivery to the insured, as there was no suspensive condition to the consummation of the contract. This was held in view of the fact that the insured, at time he applied for the insurance, made arrangements with the agent for payment of the premium whereby the agent was to accept his notes and himself pay to the insurer the amount of the premium, less the agent's commission.
In the Coci case, it was held that since the premium had been paid at time the application was signed and the policy issued, without any suspensive condition as to its effectiveness, delivery of the policy to the insured was effected when it was mailed to the local agent. It is said in the opinion that the delivery contemplated was not necessarily manual. The court in effect approved the general rule (14 Ruling Case Law, page 898) that when the first premium accompanies the application, and policy, without suspensive conditions, restrictions or limitations, issues, it becomes completely effective on issuance. We see no good reason for holding otherwise. The simple act of delivery in such a case is of no real significance as regards the mutually binding character of the policy.
The Pruitt case elaborately discusses the question of delivery of the insurance policy involved therein. The whole field is considered and an array of authorities cited and quoted from. Both sides in the case at bar derive comfort from the opinion in that case. The crux of the opinion, so far as is pertinent to the present case, is clearly expressed in the following excerpt therefrom, viz. [202 La. 527, 12 So.2d 262]:
" 'The controlling question is not who has the actual possession of the policy, but who has the right of possession. * * * ' 32 C.J. 1125, § 228. 'A delivery is not effected, however, by a transmission of the policy to the agent of the insurer under instructions to turn over the policy to the insured only after the compliance with certain conditions, such as that the applicant shall be in good health at the time, or that the premium shall be paid.' 29 Am. Jur. 166, Section 152. For other authorities on this subject, see, 14 R.C.L. 898, Section 76; 53 A.L.R. 495, etc.; Vol. 1 of Couch's Cyclopedia of Insurance Law 225, etc., particularly Sections 118 and 125."
We said in the beginning of this opinion that but for one exception no dispute existed as to the facts. The exception relates to whether or not the bull's refusal to consume a normal quantity of food over a period of days prior to manifestation of the disease of which he died, may be ascribed to change in environment or was advance evidence of the malady of which he died. We find it unnecessary to pass upon this question of fact.
For the reasons herein assigned, the judgment from which appealed, is reversed, annulled and set aside, and this suit is dismissed at the cost of the plaintiff.
KENNON, J., dissents and gives reasons. *Page 112