United States Court of Appeals,

Fifth Circuit.

No. 96-30676.

McDERMOTT INTERNATIONAL, INC., Plaintiff-Appellant,

v.

LLOYDS UNDERWRITERS OF LONDON, John Richard Ludbrooke Youell, as rep of those certain underwriters Subscribing to memorandum of insurance no. 104207, Defendant-Appellee.

McDermott International, Inc., Plaintiff,

v.

The Orion Insurance Company PLC T A/C; et al., Defendants.

Sept. 2, 1997.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before JONES, STEWART and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This case—on appeal before us a third time[1]—presents the questions of whether enforcement of an arbitration clause in an insurance contract was error, and if not, whether the district court had the authority to confirm the arbitration decision rendered in favor of Certain Underwriters at Lloyds (Lloyds). Pursuant to an arbitration clause in an all-risks installation floater policy issued to McDermott International, Inc. (McDermott) by Lloyds, the district court ordered McDermott to submit to

---

[1]See *McDermott Int'l, Inc. v. Lloyds Underwriters,* 981 F.2d 744 (5th Cir.), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) (*McDermott II*); *McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199 (5th Cir.1991) (*McDermott I*).

1

arbitration.  The arbitration panel concluded that there was no coverage under the policy.  The district court confirmed the panel's decision, rejected McDermott's argument that the arbitration clause was void under Louisiana law (La.R.S. 22:629 (West 1995)), and concluded that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 9 *et seq.*) (the Convention) rendered the arbitration clause enforceable. McDermott appeals.  We affirm, but for slightly different reasons than those articulated by the district court.

BACKGROUND AND PROCEDURAL HISTORY[2]

*The Facts That Spawned This Nine-Year-Old Litigation*

McDermott is a Panamanian corporation with headquarters in New Orleans, Louisiana.  McDermott purchased an all-risks installation floater policy from Lloyds that covered losses suffered by McDermott's subsidiary Babcock & Wilcox Company (Babcock).  A London insurance broker negotiated the policy terms in London on behalf of McDermott, and the original policy was delivered to McDermott's broker in London;  the original of the policy remained in London and photocopies of the policy were sent to McDermott's Canadian broker and McDermott headquarters in New Orleans. McDermott's policy covered risks of physical loss or damage to Babcock's "property ... during the course of installation, erection, or whilst being dismantled ... including transits."  The policy also contained an arbitration clause which provided in part

---

[2]We rely in part on the statement of facts set forth in *McDermott I,* 944 F.2d at 1201 and *McDermott II,* 981 F.2d at 746.

2

that "[a]ll differences arising out of this contract" must be resolved through arbitration.

Babcock supplies utilities with equipment that generates electrical power. In 1989, Babcock was installing two air-heat exchangers for Baltimore Gas & Electric Company (Baltimore) when a chemical reaction irreparably damaged the exchangers. McDermott tendered coverage under the policy. Lloyds denied coverage, thus triggering this litigation.

*McDermott I*

McDermott first filed suit in Louisiana state court, seeking $39,247,000 in damages under the policy. Citing the arbitration clause, Lloyds demanded that McDermott submit to arbitration to resolve the issues raised in the state-court suit. McDermott promptly filed a declaratory judgment action in Louisiana state court seeking a declaration that it need not submit to arbitration.

Lloyds removed both suits to federal court pursuant to the Convention. After consolidating the two suits, the district court remanded the cases to state court, holding that the service-of-suit clause in the policy entitled McDermott to resolve its claim in the forum of its choosing. Lloyds appealed the remand order and we reversed. *McDermott I,* 944 F.2d 1199. We concluded in *McDermott I* that the insurance contract, Congress's intent with regard to the scope of the Convention, and Fifth Circuit precedent compelled the conclusion that the service-of-suit clause did not extinguish Lloyds's removal rights.

*McDermott II*

3

Back to federal district court the parties went.  In addition to the two suits that were the subject of *McDermott I,* three other suits were also pending in federal court.[3]  These additional suits were consolidated with the two prior suits.  Lloyds moved to compel arbitration and stay all related litigation pending the outcome of the arbitration.  The district court granted Lloyds's motion in February 1992.  McDermott once again appealed to this court, and in the alternative, asked us to review the district court's order compelling arbitration under the rubric of a writ of mandamus.  We dismissed the appeal and declined to issue a writ of mandamus, holding that the district court's order was interlocutory (and not final) and that McDermott failed to meet the rigorous standard governing issuance of a writ of mandamus.  In so holding, we stopped short of addressing the correctness of the decision to compel McDermott to submit to arbitration.

*The Instant Appeal*

A panel of three arbitrators ultimately heard the McDermott-Lloyds dispute.  One arbitrator was picked by Lloyds;  one by the district court;  and one by McDermott.  After the panel of arbitrators was convened, McDermott and Lloyds spent some time exchanging information and agreeing on arbitration procedures.  After an approximately four-week hearing (occurring in two

---

[3]Suit 1:  McDermott versus an insurance broker (removed on the basis of diversity jurisdiction), in which McDermott alleged that an unauthorized coverage letter bound the adjuster contractually to pay for McDermott's loss.  Suits 2 and 3:  Lloyds versus the same broker (diversity jurisdiction), in which Lloyds sought indemnification from the adjuster for any damages awarded for McDermott against Lloyds.

4

sessions), the arbitration panel decided by a 2-1 vote[4] that the Lloyds policy did not cover the damage to the air-heat exchangers.

Lloyds thereafter moved the district court to confirm the arbitration decision. McDermott opposed the motion, arguing that because the arbitration provision did not contain a consent-to-confirmation clause, the district court had no jurisdiction to confirm the arbitration panel's decision. The district court rejected McDermott's position and confirmed the award. This timely appeal followed.

### DISCUSSION

McDermott makes three arguments in this appeal.[5] First, it claims that La.R.S. 22:629—which, if triggered, renders arbitration clauses in insurance policies null and void—is not preempted by the Convention because the McCarran-Ferguson Act (15 U.S.C. § 1101 *et seq.*) insulates state regulation of insurance from federal preemption. Second, McDermott argues that the facts surrounding the negotiation, purchase, and delivery of the Lloyds policy bring this case within the ambit of La.R.S. 22:629. Third, McDermott contends that the district court did not have jurisdiction to confirm the arbitrators' decision. Although we ultimately reject

---

[4]The arbitrators chosen by Lloyds and the district court sided with Lloyds, and the arbitrator selected by McDermott sided with McDermott.

[5]We do not address McDermott's fourth argument because it was disposed of in *McDermott I.* McDermott once again claims that the service-of-suit clause in the Lloyds policy operated as a waiver of Lloyds's right to remove this suit to federal court. We rejected that claim in *McDermott I,* 944 F.2d at 1209-13, and we shall not disturb that finding because it is the law of the case.

McDermott's position, we first address a few preliminary matters that narrow considerably the scope of this appeal.

In *McDermott II,* we left open the question of whether McDermott was properly ordered to submit to arbitration. We now field the *McDermott II* pitch and conclude that the arbitration clause in the Lloyds policy is enforceable. In reaching this conclusion, we decline to address McDermott's first contention—whether the Convention preempts La.R.S. 22:629—because resolving that question is not necessary to the disposition of this case. Rather, we shall assume, without deciding, that the Convention does not preempt La.R.S. 22:629.[6] Accordingly, this appeal presents the questions of whether La.R.S. 22:629 renders the arbitration clause in the Lloyds policy nugatory, and if not, whether the district court had the authority to confirm the arbitration decision. We turn to these questions now.

I. DO THE FACTS OF THIS CASE TRIGGER LA.R.S. 22:629?

Compulsory arbitration clauses in certain insurance contracts are unenforceable in Louisiana because of La.R.S. 22:629, which provides in part as follows:

> A. No insurance contract *delivered or issued for delivery in this state* and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:

> *   *   *   *   *   *

_____

[6]As such, we express no opinion on the correctness of the district court's conclusion that this case is governed by the Convention.

6

(2) Depriving the courts of this state of the jurisdiction of action against the insurer;  ...

* * * * * *

B. Any such condition, stipulation, or agreement in violation of this Section shall be void, ...

(emphasis added);  *see West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v. American Marine Corp.,* 981 F.2d 749, 750 n. 5 (5th Cir.1993) (interpreting La.R.S. 22:629);  *Doucet v. Dental Health Plans Management Corp.,* 412 So.2d 1383, 1384 (La.1982).  The threshold question we face is whether the Lloyds policy was "delivered or issued for delivery" in Louisiana.  We conclude that it was not.

Shortly before the enactment of the predecessor to La.R.S. 22:629, the Louisiana Supreme Court interpreted the meaning of "delivery" as it had been used in insurance contracts.  In *Pruitt v. Great Southern Life Ins. Co.,* 202 La. 527, 12 So.2d 261 (1942), the supreme court held that whether an insurance policy has been delivered depends upon the intentions of the parties;  delivery can be actual or constructive.  *Id.* at 531.  There are three requirements for delivery:  (1) "whether the company or its agent intentionally parts with control or dominion of the policy";  (2) whether the company or its agent "places [the policy] in the control or dominion of the insured or some person acting for him";  and (3) the underlying purpose of the delivery is to make "valid and binding [a] contract of insurance."  *Id.* at 531-32.  Although *Pruitt* did not specifically interpret 22:629(A), the *Pruitt* approach to discerning the meaning of "delivery" has been the law

in Louisiana since 1942. The court's interpretation of the word "delivery" in insurance contracts is helpful to our *Erie* guess about how the Louisiana Supreme Court would interpret delivery in 22:629(A). *See Mistich v. United Ben. Life Ins. Co.,* 199 So.2d 14, 16 (La.Ct.App. 4th Cir.1967); *see also Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 574 (5th Cir.1990) (interpreting Louisiana law). And it is also well-settled that delivery orchestrated to avoid the application of Louisiana law will not be sanctioned. *See Grubbs v. Gulf Int'l Marine, Inc.,* 13 F.3d 168, 171-72 (5th Cir.1994); *Schexnider v. McDermott Int'l, Inc.,* 688 F.Supp. 234, 237-38 (W.D.La.1988).

The parties do not dispute the applicability of the first and third prongs of the *Pruitt* test—Lloyds parted with control of the policy (by giving it to McDermott's agent) for the purpose of entering into a contract of insurance with McDermott. The question we must answer is whether under prong two of *Pruitt,* placing the policy in the control of "some person acting for [McDermott]" amounts to delivery in Louisiana.

Lloyds argues that because the policy was delivered to McDermott's agent in London, the policy was "delivered or issued for delivery" in London. Specifically, Lloyds asserts that just because a photocopy was sent to McDermott's agent in Canada and later sent to McDermott headquarters in New Orleans does not mean that the policy was delivered or issued for delivery in Louisiana. "The invention of the photocopy machine," Lloyds says, "did not result in worldwide expansion of Louisiana jurisdiction."

8

Conversely, McDermott contends that the policy was constructively delivered in Louisiana because a photocopy of the policy was eventually received at McDermott in New Orleans. McDermott exaggerates what will happen if we agreed with Lloyds's position: "[T]his court would allow foreign insurers to avoid Louisiana state regulation simply by sending the original policy to an out-of-state broker."

Lloyds has the better argument under the facts of this case. The circumstances surrounding the negotiation and agreement to enter into the insurance contract clearly indicate to us that the Lloyds policy was not delivered or issued for delivery in Louisiana, but rather in London. A number of facts compel this conclusion: McDermott's agent negotiated in London with Lloyds's representative; the parties did not comply with Louisiana standards for issuing insurance; Lloyds is not licensed to transact insurance business in Louisiana;[7] Lloyds gave the policy to McDermott's agent in London; the policy was marked "Dated in LONDON"; after the heading "POLICY IN THE NAME OF" was listed

---

[7]*See, e.g., Bonura v. United Bankers Life Ins. Co.,* 552 So.2d 1248, 1251 (La.Ct.App. 1st Cir.1989) ("Together, [La.R.S. 22:629] and cases announce the unequivocal policy of this state that no foreign insurer may enjoy the benefits of a source of business in this state without being prepared to answer any claims based on that business by a Louisiana resident in the Louisiana courts. This policy comports with due process requirements and the insurer suffers no undue hardship thereby."), *writ denied,* 558 So.2d 1125 (La.1990); *Krueger v. Tabor,* 546 So.2d 1317, 1321 (La.Ct.App.3d Cir.1989) (same); *Velez v. Sentry Ins. Co.,* 446 So.2d 408, 410-11 (La.Ct.App. 4th Cir.1984) (same).

McDermott's agent-broker, J.H. Minet & Company;[8] and the original of the policy remains in London.[9] Taken together, these facts convince us that the policy was "delivered or issued for delivery" in London.[10] La.R.S. 22:629, therefore, was not triggered, and the arbitration clause in the Lloyds policy is enforceable.[11]

We cannot accept McDermott's position that the policy was not delivered in London because its agent allegedly did not have the authority to accept delivery of the policy and that foreign insurers would be able to evade Louisiana law through creative agent-broker arrangements. McDermott claims that its agent only

---

[8]*Compare Casey v. Prudential Ins. Co. of Am.,* 360 So.2d 1386, 1390-91 (La.Ct.App.3d Cir.1978) (holding that La.R.S. 22:629 applied to policy which expressly stated that the insurance certificate was "issued" to the insured and its employee; employee lived and employer was located in Louisiana); *see also Johnson v. Nationwide Life Ins. Co.,* 388 So.2d 464, 466-67 (La.Ct.App.2d Cir.1980) (same).

[9]By pointing out that the original policy is located in London, we by no means suggest that delivery for purposes of La.R.S. 22:629 turns solely on the location of the original insurance policy. Instead, we note the location of the policy because it reinforces our conclusion that, under the totality of the circumstances, the Lloyds policy was not delivered or issued for delivery in Louisiana.

[10]Accordingly, we need not address Lloyds's additional argument that the policy does not cover subjects (i.e., the air-heat exchangers) located, resident, or to be performed in Louisiana. And we do not decide the question of whether Louisiana courts would find a "delivery" had Lloyds delivered a certificate of insurance or a copy of the policy to McDermott in Louisiana.

[11]In 1992, the Louisiana Department of Insurance filed a declaratory judgment action in federal district court, asserting that the district court's decision to compel arbitration was error. The Department, however, later dismissed its case with prejudice, concluding that La.R.S. 22:629 did not apply to the Lloyds policy. Although we do not ground our conclusion in this case on deference to state agency decisionmaking, we simply point out the Department's conclusion because it is consistent with our own.

10

had the authority to prepare and negotiate the terms of the Lloyds policy, not to accept delivery of that policy. McDermott's position does not square with prong two of *Pruitt,* which states that delivery has occurred if the insurer "places [the policy] in the control or dominion of ... some person *acting* for [the insured]." *Pruitt,* 12 So.2d at 531-32 (emphasis added). Here, there can be no doubt that McDermott's agent was "acting" for McDermott when the agent accepted the Lloyds policy, otherwise we would be forced to conclude (contrary to our understanding of the level of sophistication McDermott and Lloyds possess in the international insurance market) that Lloyds's act of turning over the policy to McDermott's agent amounted to a meaningless gesture. Moreover, McDermott's fears about foreign insurance companies evading Louisiana law is somewhat overblown, for as we have pointed out, it is well-established that if insurance companies purposely skew their delivery procedure to avoid the application of Louisiana law, such a maneuver shall not receive judicial approval. There is no evidence that Lloyds purposely sought to evade Louisiana law by delivering the policy to McDermott's agent in London.

II. DID THE DISTRICT COURT HAVE THE AUTHORITY TO ENTER JUDGMENT ON AND CONFIRM THE ARBITRATION DECISION?

We now turn to the final question presented in this appeal—whether the district court had the authority to confirm the favorable arbitration decision rendered in Lloyds's favor. The rub here is whether § 9 of the FAA (which requires consent of both parties before an arbitration award can be confirmed (9 U.S.C. § 9)) preempts the Convention (which does not require

11

consent-to-confirmation (9 U.S.C. § 207)).  We hold that § 9 does not preempt the Convention and conclude that the district court had jurisdiction to confirm the arbitration decision.

Rather than reinvent the proverbial wheel, we extract four principles from *McDermott I,* 944 F.2d 1199, that compel our conclusion today.  First, because "this suit concerns an arbitration agreement and is not entirely between United States citizens,.. the Convention Act governs this case."  *Id.* at 1208. Second, the FAA "is the *approximate* domestic equivalent of the Convention ... [such that] [t]he Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions."  *Id.* (citing SENATE COMM. ON FOREIGN RELATIONS, FOREIGN ARBITRAL AWARDS, S.REP. NO. 702, 91st Cong., 2d Sess. 5 (1970)) (original emphasis).  Third, we recognized that " "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to ... unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.' "  *Id.* at 1212 (quoting *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974)).  Fourth, consistent with the strong federal policy favoring arbitration, we concluded that "judicial enforcement of arbitration agreements and awards ought to be "summary and speedy' out of respect for the parties' bargain to keep their disputes out of court."  *Id.* at 1213.

Because we have held that the Convention applies to this case, the enforcement provision of the Convention necessarily applies

12

unless § 9 of the FAA does not conflict with the Convention. Section 9 clearly does so conflict,[12] so we decline to apply § 9's consent-to-confirmation provision to the arbitration agreement between McDermott and Lloyds. In addition, the twin goals of uniformity and "summary and speedy" judicial enforcement of the arbitration decision are plainly furthered by the district court's action confirming the award.

Accordingly, our only task is to determine whether Lloyds complied with the three-year time limitation for requesting confirmation.[13] Lloyds did so. The district court therefore had the authority to confirm the arbitration decision.

### CONCLUSION

Finding that neither Louisiana law nor § 9 of the FAA provide McDermott a safe haven from enforcement of the arbitration clause in the Lloyds policy, the arbitration clause in the Lloyds policy is enforceable, and the district court had the authority to enter judgment on and confirm the arbitration decision in favor of Lloyds. The decision of the district court is thereby AFFIRMED.

---

[12]Section 9 of the FAA contains a consent-to-confirmation provision, whereas section 207 of the Convention Act specifically provides that "any party to the arbitration may apply to any court having jurisdiction under this chapter ... for an order confirming the award ... unless it finds ... grounds for refusal or deferral ... in the said Convention." 9 U.S.C. § 207.

[13]Article V of the Convention sets forth certain conditions which would preclude recognition and confirmation of an arbitration decision. None of those conditions compels a different result in this case.

13