No. 947

First Circuit

GUARANTY INCOME LIFE INS. CO. v. BALL ET AL.

(May 3, 1932.  Opinion and Decree.)

E. S. Muse, of St. Francisville, attorney for plaintiff, appellant.

Jos. L. Golson, of St. Francisville, attorney for defendants, appellees.

LᴇBLANC, J.  This is a suit on two promissory notes of $108.85 each, dated April 3, 1929, and payable August 1, 1929, made and signed, in solido, by B. H. and H. P. Ball, the defendants herein.  Judgment is prayed for against both defendants, in solido, for the aggregate amount of both notes, with 8 per cent per annum interest from August 1, 1929, and 15 per cent as attorney's fees.

The defendants are brothers, who plead

that the notes are null and void for want of consideration. Their defense is that these notes were given in payment of the premium of two policies of life insurance taken by each of them with the plaintiff company in the sum of $2,500, but which the plaintiff failed to issue or deliver to them as it had contracted to do. As a further defense, they plead that they were to receive as additional consideration, one certificate or share of stock in the plaintiff company for each $1,000 of life insurance issued, which they never did get.

From a judgment rejecting the plaintiff's demand and dismissing its suit, it has taken this appeal.

We believe that the defense with regard to the issuance of the certificate of stock can well be said to have been abandoned, as we find no reference whatever made to the same in brief of counsel for defendants. However, if it be still considered an issue in the case, we do not believe that there is any merit in it as a defense, for certainly there is nothing in the application for insurance by the defendants to support such claim. In fact, one of them, when asked to relate the whole transaction that took place regarding the issuance of the policies, says that Mr. Means, who was the plaintiff's agent, came to him and offered him the insurance. "For every $1,000.00 of insurance that we bought" he says, "we were supposed to receive one share of stock in the company, and I thought it a good thing and applied for it." There is, at the foot of the application, an authorization designated as a "Reservation for stock" to the Guaranty Life Insurance Company, to hold the cash dividends which will accrue from the policy as payment for certain stock, preferred and common, in the Guaranty Bond and Finance Company, Inc. We are unable to see what connection such authorization

has with the claim here made for stock in the plaintiff company. On the other hand, if the defendants base their claim on any representations that may have been made to them by the soliciting agent, Means, as appears to be their contention, they are then met with a clause in the application that any statements, promises, etc., made by the person taking the application, shall not be binding on the company unless they are reduced to writing and presented to the officers of the company, at the home office, in the application itself. It is not pretended that there were any such promises or representations made in that manner, and therefore the company cannot be held to any.

The principal defense rests on the following clause contained in the application: "That there shall be no contract of insurance until a policy shall have been delivered to me and the first premium paid to said company, or its duly authorized agent, during my life time and good health." The defense of want of consideration is based on what is alleged to have been the failure of the plaintiff to deliver the policies under the stipulation. In as much as the obligation to deliver the policy on the part of the company is connected with an obligation on the part of the insured to pay the first premium, to bring the insurance into existence, and that this very suit is predicated on notes representing, not the original or first premium, but a renewal thereof, it is somewhat difficult to reconcile the position now assumed by these defendants with their actions in executing such notes. The giving of the notes and their acceptance constituted a payment of the premium. The company thereby waived its right to demand a cash payment. Besides, there is no doubt, from the testimony of Mr. Groves, vice-president and agency director of the plaintiff company, that the policies were

issued and reported to the state insurance board, constituting a still further waiver on its part for a cash payment.

The defendants contend for a rather technical construction of the clause they rely on when they insist that delivery of the policies should have been made to each of them personally. We believe that the evidence fairly establishes the fact that they were delivered by Means, the agent, to a Mr. W. R. Daniel, who kept them in a vault, and that the defendants knew that they have been so delivered and were there kept for safe-keeping. Indeed, one of the defendants, H. B. Ball, comes dangerously near admitting that he knew they had been so delivered and were there. He is asked:

"Q. Where was the policy?
"A. I understand Mr. W. R. Daniel has it.
"Q. You said you understand, who said so?
"A. Mr. Means said they would be there.
"Q. Who is Mr. Means?
"A. Agent.
"Q. The agent who took your application?
"A. I don't know.
"Q. How come him to tell you the policy was left with Mr. Daniel?
"A. I don't know that."

This testimony does not impress us as being that of a witness who is telling or wants to tell all that he knows about the matter he is being interrogated on. This view is strengthened by a further admission he unintentionally makes, when, in relating the whole transaction as heretofore referred to in this opinion, he says: "The policy arrived, they (evidently meaning both policies) came to Mr. Daniel's office and there wasn't any stock with them. That's all." It seems obvious that the reason he did not take the policies from Daniel's was because the stock he expected to receive was not there. In this explanation of the transaction by this de-

fendant, we believe we have conveyed to us the real motive they had in resisting the payment of these notes. They had been led to believe that they would participate in the capital stock of the company, and they were disappointed when the representations made to them by Means did not materialize. As has already been stated, however, they were representations by which the plaintiff was not bound, and the failure to carry out which could not alone defeat its recovery on these notes.

Groves testifies that after they had been issued the policies were given to Means, the agent, for delivery, and he was required to have both insured sign an extra premium rider because of some physical impairment. These riders are in evidence and show that they were signed by both defendants, in the presence of Means, on May 3, 1928, several weeks after the policies had been issued. Groves says further that he knew the policies were in Daniel's vault, and that defendants also knew that they were there because he had told them so.

The circumstance relied on the strongest as affecting the plaintiff's case arises from the failure of Means, the agent, and Daniel to have testified, and the absence of any explanation in that regard. We are of the opinion, however, that it is a circumstance which only gives rise to certain presumptions, and that it is outweighed by the undisputed fact of the giving of the notes by the defendants for the first premiums on the policies and their renewals without ever having questioned the delivery of the policies, more than one year after they had been written.

It is urged on the part of the defendant B. H. Ball, that he did not sign the application for insurance, did not consent to the increase of rate, and in fact knew almost nothing whatever about the matter.

It is contended therefore, that even though the consent in change of rate be considered as evidence of delivery that was binding on H. P. Ball, it cannot affect B. H. Ball, who never gave his consent thereto. We find the testimony of B. H. Ball to be of a very passive character. It seems as though his brother was the one who conducted most of the negotiations for him, but we believe that he was fully aware of what it was all about. He stood the required medical examination and signed the blanks in connection therewith, and he also admits signing the original and renewal notes. We believe that he had the knowledge which the evidence shows his brother had of the delivery of the policies to Daniel, and in whose possession they remained with their implied consent. He was thus constituted their agent for the purpose of delivery of the policies. It was not a manual or personal delivery to them, but it was a constructive delivery, which, we believe, had the effect of fulfilling the company's obligation under the contract.

We are of the opinion that the trial judge improperly rejected the plaintiff's demand and dismissed its suit, and that judgment should be rendered against the defendants, as prayed for.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment of the district court be, and it is hereby reversed, set aside and annulled, and it is further ordered, adjudged, and decreed that there be judgment in favor of the plaintiff Guaranty Income Life Insurance Company, and against the defendants Ben H. Ball and H. Perkins Ball, in solido, for the full sum of $217.35, with 8 per cent per annum interest from August 1, 1929, until paid, together with 15 per cent of said amount as attorney's fees.

Defendants to pay the costs in both the district court and this court.