146 So.2d 292 (1962)
Hugh M. BROUSSARD, Plaintiff and Appellee,
v.
FIDELITY STANDARD LIFE INSURANCE COMPANY, Defendant and Appellant.
No. 676.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
*293 Joseph A. Loret and Theo F. Cangelosi, Baton Rouge, for defendant-appellant.
Charles A. Riddle, Jr., Marksville, for plaintiff-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit by the insured to rescind a life insurance contract for fraud and error. After trial on the merits, the district court entered judgment rescinding the policy and ordering defendant to refund all premiums paid, less a credit of $30.60 for a dividend. The defendant appeals.
Plaintiff's contention is that he purchased the policy through error induced by the fraudulent representations of defendant's agent, Harry Kohler, that he would receive very large dividends. Defendant does not deny that the representations of its agent were false, but contends that such representations are not binding on it because the application for insurance contains a clause to that effect. Defendant also contends that plaintiff is guilty of laches in waiting over two years to bring this suit, and further that plaintiff is estopped because he has received insurance protection for said two year period, knowing the representations of the agent were false.
The trial judge has thoroughly and correctly analyzed the evidence in a well considered, written opinion. No useful purpose would be served by our doing anything more than briefly stating the facts which he has found.
The facts are that the plaintiff is a 49 year old farmer and cattle raiser with little *294 formal education, who could not readily understand insurance contracts. He is single, has never been married and has no children. He was not interested in a life insurance contract except as an income producing investment. Defendant's agent, Harry Kohler, represented to plaintiff that his company would pay substantial dividends on a 20 year pay life insurance contract in the sum of $5,000 on which the annual premiums were $633.40. On plaintiff's request, Kohler even went so far as to write a schedule showing the amount of premiums and the amount of dividends which plaintiff could expect to receive for the 20 years. According to this schedule, which was filed in evidence, the plaintiff would only have to pay premiums during the first five years, totaling $1,900.28. During the next 15 years he would pay no premiums and would receive a total of $13,301.40 in dividends. At the end of the 20 year period he would also have a paid up life insurance policy in the sum of $5,000.
Relying on these false and fraudulent representations plaintiff signed an application for the insurance and paid the first year's premium. It is true the application states that the policy which was to be issued in consequence thereof would constitute the entire contract of insurance and that the defendant insurance company would not be bound in any way by any statements or promises made by the agent unless the same were reduced to writing and approved by the home office.
In due course, the policy, dated January 9, 1959, was delivered to plaintiff by Mr. Kohler, at which time plaintiff signed a receipt therefor which stated that the policyholder found the contract of insurance to be exactly the same as applied for and as represented.
Sometime after receiving the policy, plaintiff read it but he didn't understand it and relied entirely on the schedule of premiums and dividends which had been given to him by Mr. Kohler. According to this schedule, plaintiff was to receive a dividend of $126.68 at the end of the first year but he actually received none. He paid the second annual premium but did not receive the dividend of $253.28 shown on Kohler's schedule. He then wrote to the defendant insurer stating what he had been promised by their agent and demanding an explanation. The defendant finally, on about April 21, 1961, mailed plaintiff a dividend check in the sum of $30.60. After an exchange of correspondence in which the defendant insurer stated that it was not responsible for any representations made by its agent and the plaintiff offered to surrender the policy on return of his premiums, plaintiff finally filed this suit.
The law is clear that a contract may be nullified by a party who has contracted under the influence of error caused by fraudulent representations bearing on a material part of the contract. LSA-C.C. Art. 1847; LSA-C.C. Art. 1881; LSA-C.C. Art. 1882; Swain v. Lindsay, La.App., 85 So.2d 360; McGee v. Finley, La.App., 65 So.2d 384.
As applied to insurance contracts in particular, a general statement of the law is found in 45 C.J.S. Insurance § 470, pp. 147-148 as follows:
"Insured may rescind the contract of insurance if it was induced by fraud or concealment, and he himself was not at fault and offers to do equity. To justify a rescission the fraud must have been the inducement to the contract, and the representations must have been made at the time the contract was consummated. Where the rescission is based on false representations, they must be material, and be representations of fact, not mere expressions of opinion."
Applying the above statements of the law to the facts of the instant case, we are of the opinion that plaintiff would not have purchased the policy in question except *295 for the error induced by fraudulent representations of defendant's agent that these very large dividends would be paid. Furthermore, as will be discussed hereinafter, under the issue of estoppel, we do not find that plaintiff was at fault in relying on these fraudulent representations. These representations were material because they were actually the motivating factor which induced plaintiff to purchase the policy.
On the issue of laches, the facts show that after the second year of the policy elapsed and plaintiff still did not receive any dividends, he wrote to the defendant insisting that they fulfil their agent's promises. Defendant then mailed plaintiff a check for $30.60 representing dividends. Immediately plaintiff contacted his attorney and, after a short period of fruitless negotiations, this suit was filed.
A statement of the law which is applicable is found in 45 C.J.S. Insurance § 470, p. 149 as follows:
"* * * While it has been said that insured may rescind for fraud at any time, he must act promptly and seek relief within a reasonable time. Ordinarily, what constitutes a reasonable time for rescission is a question for the jury, but it may be a question for the court if the facts are undisputed."
Under the facts as above set forth, we do not think the plaintiff delayed in seeking relief for an unreasonable time under the circumstances. After receiving the dividend check dated April 21, 1961 in the sum of $30.60, which finally caused plaintiff to realize that a fraud had been perpetrated on him, he wrote to defendant and then contacted an attorney. Plaintiff's attorney wrote a letter dated May 17, 1961 demanding that the policy be cancelled and his premiums returned. Further efforts by plaintiff's attorney to settle the matter amicably were fruitless and this suit was filed in August of 1961.
Defendant also contends that plaintiff is estopped because: (1) The application for insurance signed by plaintiff states that no representations made by the agent will be binding on the company unless reduced to writing and approved by the home office; (2) The receipt for the policy, signed by plaintiff, states that the policy is exactly the same as applied for and as represented by the agent; (3) The dividends which the agent stated plaintiff could expect to receive were so large as to be unreasonable and beyond belief so that plaintiff should have realized the representations were false.
A general statement of the applicable law is found in 45 C.J.S. Insurance § 470, p. 149 as follows:
"* * * Insured is not estopped to rescind by failing to avail himself of the means of ascertaining the truth of the representations complained of, unless he was inexcusably negligent. He may rely on the agent's representations as to matters not within general knowledge, especially where he is illiterate. If, however, insured is inexcusably negligent in discovering the truth, he cannot rescind. The failure of insured to read the policy when it is delivered to, and accepted by, him will bar his right to rescind on the ground that by reason of fraud or mistake it does not correspond with his application or with oral representations of the agent, unless his failure to examine the policy or his delay in so doing is not unreasonable under the circumstances or is due to fraud on the part of the company or its agent."
In the instant case the facts show that plaintiff was a 49 year old farmer with little formal education who was not likely to be able to understand an insurance contract. He testified that he found it hard to believe such large dividends could be paid so he did take the precaution of having the agent write out the schedule of premiums and dividends. On the basis of *296 this fraudulent representation, plaintiff signed the application and paid the first year's premium. He received the policy from the agent and signed the receipt not realizing the effect thereof. Soon afterward he read the policy but he testified he was unable to understand it and relied entirely on the written schedule of premiums and dividends which had been given to him by the agent. Under these circumstances we do not think that plaintiff's actions were so unreasonable as to constitute fault or negligence sufficient to estop him from the rescission of the policy.
The case of Guaranty Income Life Insurance Co. v. Ball, 19 La.App. 759, 141 So. 520 (1st Cir.App.1932), cited by defendant, was a suit on two notes given in payment of premiums. The insured defended on the grounds of failure of consideration, alleging the agent had promised defendant would receive one share of stock for each $1,000 of life insurance. The court held that the insurer was not bound by these promises of its agent to deliver stock. The suit was not to rescind the policy and has no application to the instant case.
Defendant also cites Shuff v. Life & Casualty Insurance Co., 164 La. 741, 114 So. 637 (1927) in which the insured, also an agent of the defendant, knowingly colluded with another agent to obtain a life insurance policy at a time when the insured was not in good health. After the insured's death the beneficiary sued on the policy. The court sustained the defense of fraud and error, holding that even though the insurer's agent knew the insured was not in sound health, he had been guilty of no fraud or misrepresentation relied upon by the insured, who also knew all of the facts. Since the policy had been issued in violation of the company's instructions, the court denied recovery. The Shuff case also has no application to the issues of the instant case. In the Shuff case the insured was not the victim of fraud and error but was actually the perpetrator of such misrepresentations.
As pointed out by the trial judge, equitable considerations strongly favor the plaintiff in this case. Plaintiff was victimized by defendant's agent. He does not seek to enforce the promises of large dividends made by defendant's agent. He simply offers to cancel the policy on return of the premiums which he has paid. It is our opinion he is entitled to this relief.
For the reasons assigned the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.